MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 103
Docket:      Kno-17-51
Argued:      March 6, 2018
Decided:     July 24, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

CHARLES M. MARTIN

v.

DEPARTMENT OF CORRECTIONS

JABAR, J.

[¶1]  This case calls for us to consider whether in Maine, pursuant to the "prisoner mailbox rule," a pro se prisoner's civil petition for review of a decision by the Department of Corrections should be deemed "filed" on the date it is delivered to prison officials to be forwarded to the clerk of court rather than the date it is received by the clerk of court.  We conclude that in circumstances where, as here, (1) a prisoner is forced to rely on the Department of Corrections to ensure that his Rule 80C petition—challenging the Department's administrative action against him—is filed; (2) that prisoner places the petition into the "control" of the Department; and (3) the Department fails to timely deliver his petition to the clerk of court, the open courts provision and due process clause of the Maine Constitution require that

2

the prisoner mailbox rule apply and the petition be deemed timely filed. Accordingly, we vacate the judgment.

## I. BACKGROUND

[¶2] The following facts are undisputed. *See Ewing v. Me. Dist. Court*, 2009 ME 16, ¶ 3 & n.2, 964 A.2d 644. On May 16, 2016, Charles M. Martin, a prisoner incarcerated at the Maine State Prison, signed a petition pursuant to 5 M.R.S. § 11002 (2017) for judicial review of a Department decision finding that he had committed a disciplinary infraction. Two days later, on May 18, 2016, he submitted that petition to prison authorities for forwarding to the Superior Court. However, the clerk of court did not receive the petition until May 26, 2016.

[¶3] After accepting service of the petition, the State moved to dismiss it for failure to state a claim upon which relief may be granted. *See* M.R. Civ. P. 12(b)(6). According to the State, because Martin's petition did not specify "any date related to the action being challenged," he failed to "make the factual allegations necessary" to show that he filed the petition within the thirty-day period prescribed by 5 M.R.S. § 11002(3). Martin responded with a motion to amend the petition, a supporting affidavit, and a proposed amended petition specifying that he was notified of the Department decision on

April 25, 2016. The Superior Court (Knox County, *Stokes, J.*) granted that motion.[1]

[¶4] Consequently, the State filed a second motion to dismiss, arguing that because the clerk of court received Martin's petition on May 26, 2016—thirty-one days after Martin was notified of the Department's decision and therefore one day outside the thirty-day statutory window—the Superior Court lacked jurisdiction over the matter. *See* M.R. Civ. P. 12(b)(1). Martin opposed the State's motion to dismiss, submitting an affidavit averring that he signed the petition on May 16, 2016, and that he gave the petition to a unit sergeant to mail on May 18, 2016. Citing the United States Supreme Court's decision in *Houston v. Lack*, 487 U.S. 266 (1988), Martin urged the Superior Court to apply the "prisoner mailbox rule," whereby the court would consider his petition filed on the date he deposited it with prison officials for forwarding to the clerk of court, May 18, rather than when it was received by the clerk of court, May 26.

[¶5] The court granted the State's motion to dismiss, concluding that the thirty-day time limit pursuant to section 11002(3) is "jurisdictional and mandatory" and that "Maine has not yet adopted the so-called federal mailbox

---

[1] The court did not explicitly rule on the State's motion to dismiss. However, we infer that the court did so by granting Martin's motion to amend.

4

rule." Martin then filed a M.R. Civ. P. 60(b) motion for relief from judgment, which the court denied. This appeal followed. *See* 5 M.R.S. § 11008(1) (2017); M.R. App. P. 2(b)(3) (Tower 2016).[2]

## II. DISCUSSION

[¶6] Citing *Houston v. Lack*, Martin argues that the court's failure to apply the prisoner mailbox rule violated his constitutional right to meaningful access to the judicial process because he "had no opportunity to bypass the prison personnel and ensure that his petition was mailed in a more reliable fashion." According to Martin, his "only option, beyond breaking out of jail to hand deliver the package himself, was to give his mail to the prison authorities, the representatives of the very agency against whom he was seeking an appeal." In response, the State contends that Martin was not denied access to the courts because even accounting for the jail's delay in delivering his petition for review to the court, he was still provided the "ample time" of 23 days to prepare his petition and ensure that it was timely received.

[¶7] We review de novo a court's denial of a motion pursuant to M.R. Civ. P. 60(b)(4)[3] to set aside a judgment because of a constitutional violation. *See Reliable Copy Serv., Inc. v. Liberty*, 2011 ME 127, ¶ 8, 32 A.3d 1041.

---

[2] The restyled Maine Rules of Appellate Procedure do not apply because this appeal was filed before September 1, 2017. *See* M.R. App. P. 1 (restyled Rules).

A.    Statutory Provisions

[¶8]  The Administrative Procedure Act (APA) and the Maine Rules of Civil Procedure govern the commencement of an appeal from a state agency's[4] decision.  *See* 5 M.R.S. §§ 11001-11008 (2017); M.R. Civ. P. 80C(b). Rule 80C(b) provides, "The time within which a review of final agency action or the failure or refusal of an agency to act may be sought shall be as provided by 5 M.R.S.A. § 11002(3)."  Section 11002(3) of the APA provides, "The petition for review shall be filed within 30 days after receipt of notice if taken by a party to the proceeding of which review is sought."  Although the APA does not define the term "filed," section 11002(1) specifies that the petition for review must be filed "in the Superior Court."  5 M.R.S. § 11002(1).

B.    *Houston v. Lack*

[¶9]   In *Houston v. Lack*, the Supreme Court articulated the unique obstacles facing pro se prisoners in exercising their right to access the courts. 487 U.S. at 270-71.  There, the Court considered whether a prisoner's civil appeal was timely filed where it was delivered to prison authorities three

---

3  Although Martin specified M.R. Civ. P. 60(b)(1) and M.R. Civ. P. 60(b)(6) as the grounds for the motion, his argument—that "[i]t was a mistake to believe that I could count on the respondent[s] . . . to take responsible and prompt action, in regards to the actual mailing of the petition for review"—can reasonably be read as a contention that the Department violated his right of access to the courts by failing to deliver his petition to the clerk of court in a timely manner.

4  As used here, "agency" includes the Department of Corrections.  5 M.R.S. § 8002(2) (2017).

6

days before the expiration of the thirty-day filing period established by Federal Rule of Appellate Procedure 4(a)(1),[5] but was received by the clerk of court one day after the filing period expired. *Houston*, 487 U.S. at 268-69. The Court concluded that for purposes of then Rule 4(a)(1), the petitioner's appeal was filed at the moment it was delivered to prison authorities, and the Court's reasoning in so creating this prisoner mailbox rule warrants quotation at some length—

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation. . . . Worse, the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the

---

[5] When the Supreme Court decided *Houston v. Lack*, Federal Rule of Appellate Procedure 4(a)(1) provided,

> In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from . . . .

Fed. R. App. P. 4(a)(1) (1992) (amended 1993).

prison authorities, he can never be *sure* that it will ultimately get stamped "filed" on time.

*Id.* at 270-71.

[¶10]  Because *Houston v. Lack* involved the interpretation of a federal rule of procedure and did not invoke the United States Constitution, the Supreme Court's decision is not binding on the states.  *See State ex rel. Tyler v. Alexander*, 555 N.E.2d 966, 967 (Ohio 1990).  However, since *Houston*, numerous states have addressed the issue—twenty-two states have adopted a variation of the prisoner mailbox rule through court decision,[6] and two states have adopted the Rule through state rules of procedure.[7]  Although many states, following *Houston*'s example, have adopted the Rule by interpreting state statutes and/or court rules, *see, e.g.*, *Warner v. Glass*, 135 S.W.3d 681,

---

[6]  These states are Alabama, *Ex parte Williams*, 651 So. 2d 569 (Ala. 1992); Arizona, *Mayer v. State*, 908 P.2d 56 (Ariz. Ct. App. 1995); California, *In re Jordan*, 840 P.2d 983 (Cal. 1992); Florida, *Haag v. State*, 591 So. 2d 614 (Fla. 1992); Georgia, *Massaline v. Williams*, 554 S.E.2d 720 (Ga. 2001); Hawaii, *Setala v. J.C. Penney Co.*, 40 P.3d 886 (Haw. 2002); Idaho, *Munson v. State*, 917 P.2d 796 (Idaho 1996); Indiana, *Dowell v. State*, 922 N.E.2d 605 (Ind. 2010); Kansas, *Taylor v. McKune*, 962 P.2d 566 (Kan. Ct. App. 1998); Kentucky, *Hallum v. Commonwealth*, 347 S.W.3d 55 (Ky. 2011); Louisiana, *Tatum v. Lynn*, 637 So. 2d 796 (La. Ct. App. 1994); Massachusetts, *Commonwealth v. Hartsgrove*, 553 N.E.2d 1299 (Mass. 1990); Mississippi, *Sykes v. State*, 757 So. 2d 997 (Miss. 2000); Nevada, *Kellogg v. Journal Commc'ns*, 835 P.2d 12 (Nev. 1992); Oklahoma, *Woody v. State ex rel. Dep't of Corrs.*, 833 P.2d 257 (Okla. 1992); Oregon, *Hickey v. Or. State Penitentiary*, 874 P.2d 102 (Or. Ct. App. 1994); Pennsylvania, *Smith v. Pa. Bd. of Prob. & Parole*, 683 A.2d 278 (Pa. 1996); South Carolina, *Mose v. State*, 803 S.E.2d 718 (S.C. 2017); Texas, *Warner v. Glass*, 135 S.W.3d 681 (Tex. 2004); Vermont, *In re Bruyette*, 136 A.3d 575 (Vt. 2016); Washington, *State v. Hurt*, 27 P.3d 1276 (Wash. Ct. App. 2001); and Wisconsin, *State ex rel. Shimkus v. Sondalle*, 620 N.W.2d 409 (Wis. Ct. App. 2000).

[7]  These states are Colorado, Colo. R. Civ. P. 5(f); and Tennessee, Tenn. R. Civ. P. 5.06.

682 (Tex. 2004); *State v. Hurt*, 27 P.3d 1276, 1282 (Wash. Ct. App. 2001), other states have adopted the Rule by tolling the applicable statutes of limitations, *see Taylor v. McKune*, 962 P.2d 566, 570 (Kan. Ct. App. 1998); *Mose v. State*, 803 S.E.2d 718, 721-23 (S.C. 2017); *State ex rel. Shimkus v. Sondalle*, 620 N.W.2d 409, 412 (Wis. Ct. App. 2000).

[¶11]   The circumstances of this case, however, preclude us from following either approach.  In *Houston*, as here, the prisoner's appeal was subject to both a rule of procedure and a statute establishing the filing deadline.  *See* Fed. R. App. P. 4(a)(1); 28 U.S.C.S. § 2107(a) (LEXIS through Pub. L. No. 115-196).  Nevertheless, unlike this case, the statutory filing deadline in *Houston* did not specify *where* a notice of appeal was required to be filed.  *Compare* 28 U.S.C. § 2107 (providing a deadline to file but not specifying which court to file in), *with* 5 M.R.S. § 11002(1) (2017) (specifying that petitions for review must be filed "in the Superior Court").  As such, whereas the *Houston* Court held that the absence of such a specification permitted its interpretation that a different meaning of the word "filed" could apply to pro se prisoners, 487 U.S. 266 at 272, we are unable to reach the same conclusion here due to section 11002(1)'s clear directive that filing must occur "in the Superior Court," *see Darling's v. Ford Motor Co.*, 1998 ME 232,

¶ 5, 719 A.2d 111 ("When interpreting a statute, we seek to give effect to the intent of the Legislature by examining the plain meaning of the statutory language . . . ."). Accordingly, we cannot consider this case in the same manner as did the *Houston* Court.

[¶12] Nor can we, as other states have done, permit Martin's petition to proceed by tolling the thirty-day filing deadline provided in 5 M.R.S. § 11002(3). Although "[s]tatutory filing deadlines are presumptively subject to equitable tolling," that presumption is rebutted when those deadlines "define the court's jurisdiction," *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir. 2004), and we have previously held that the time limits contained in the APA are jurisdictional, *see Brown v. State, Dep't of Manpower Affairs*, 426 A.2d 880, 888 (Me. 1981) ("We now state expressly that the Act's time limitations are jurisdictional."); *see also Reed v. Halperin*, 393 A.2d 160, 162 & n.6 (Me. 1978) (explaining that the APA does not permit judicial-enlargement of time limitations for judicial review). As such, this appeal must be considered on constitutional grounds.

C.    Constitutional Considerations

[¶13] Particularly relevant here, of the twenty-four states that have adopted the Rule, two states—Florida and Oklahoma—have done so on

constitutional grounds, holding that failure to adopt the Rule would violate the principles of fundamental fairness contained in their respective constitutions. *See Haag v. State*, 591 So. 2d 614, 616-17 (Fla. 1992); *Woody v. State ex rel. Dep't of Corrs.*, 833 P.2d 257, 259-60 (Okla. 1992). Indeed, relying on *Houston*, the Supreme Court of Oklahoma in *Woody* concluded that pursuant to the provision of its state constitution analogous to our own open courts provision, "the courts must be open to all on the same terms without prejudice. The framers of the Constitution intended that all individuals without partiality could pursue an effective remedy designed to protect their basic and fundamental rights. . . . The constitutional guarantee of access to the courts is not an empty formality." 833 P.2d at 260.

[¶14] The same reasoning applies with equal force in this case, and we therefore conclude that the Supreme Court's rationale in *Houston* rings of the fundamental fairness required by both the open courts provision and due process clause of the Maine Constitution. *See* Me. Const. art. I, §§ 6-A, 19.

[¶15] The open courts provision states that "[e]very person, for an injury inflicted . . . shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without

denial, promptly and without delay."  Me. Const. art. I, § 19.[8]  Pursuant to this provision, courts are required to "be accessible to all persons alike without discrimination . . . for every wrong recognized by law as remediable in a court."  *Me. Med. Ctr. v. Cote*, 577 A.2d 1173, 1176 (Me. 1990).  Although the Legislature "may erect reasonable procedural requirements for exercising the right to an adjudication," *Irish v. Gimbel*, 1997 ME 50, ¶ 16, 691 A.2d 664, such requirements may not "absolutely deprive [a citizen] of his remedy under color of regulating it," *Sampson v. Sampson*, 63 Me. 328, 333 (1874).  Thus, "[w]e do not construe section 19 as prohibiting reasonable limits on the time within which a claimant must seek redress in the courts. . . .  The only issue of constitutional significance is whether such time limits are *so unreasonable as to deny meaningful access to the judicial process*."  *Cote*, 577 A.2d at 1176 (emphasis added).

[¶16]  Likewise, the due process clauses of the Maine and United States Constitutions also establish a right to meaningful access to the judicial

---

[8] This "sweeping guarantee" is derived from Part I, Article XI, of the Massachusetts Constitution of 1780, and "[i]ts roots are in Magna Carta, chapter 29, as interpreted by the great seventeenth-century jurist Lord Coke."  Marshall Tinkle, *The Maine State Constitution* 58 (2d ed. 2013) (citing Cary L. Fleisher, Comment, *Article 1, Section 19 of the Maine Constitution: The Forgotten Mandate*, 21 Me. L. Rev. 83, 84-85 (1969)).  The Magna Carta provides, in pertinent part, "We will sell to no man, we will not deny or defer to any man either justice or right," which Lord Coke interpreted to mean that "every subject of this realm, for injury done to him . . . may take his remedy by the course of the law, and have justice, and right for the injury done to him, freely without sale, fully without any deniall, and speedily without delay," 1 E. Coke, *The Second Part of the Institutes of the Laws of England* 45, 55 (1797).

process. U.S. Const. amend. XIV, § 1; Me. Const. art. 1, § 6-A; *see Johnson v. Avery*, 393 U.S. 483, 498 & n.24 (1969). The Maine Constitution's concept of due process is identical to that contained in the United States Constitution, *Penobscot Area Hous. Dev. Corp. v. City of Brewer*, 434 A.2d 14, 24 n.9 (Me. 1981), and as the Supreme Court has held, "absent a countervailing state interest of overriding significance," a generally valid statute or rule "may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right," *Boddie v. Connecticut*, 401 U.S. 371, 377, 379 (1971).

[¶17] As applied to Martin, the filing requirements contained in 5 M.R.S. § 11002(1), (3) and M.R. Civ. P. 80C(b)—which do not prohibit prison officials from determining when, or if, they forwarded his petition to the clerk of court—are so unreasonable that they effectively deprived him of his right to "meaningful access to the judicial process." *Cote*, 577 A.2d at 1176; *see Boddie*, 401 U.S. at 379. Martin necessarily lost control over his petition on May 18, 2016, the moment it was delivered to prison authorities, and no matter how far in advance he delivered the petition, he could never be *certain* that the court clerk would receive it by May 25, 2016. Thus, he was denied the opportunity to contest his disciplinary matter when the petition was received

by the clerk of court on May 26, 2016, one day outside of the statutory window and eight days after he gave it to the prison.

[¶18] "[I]n the absence of a sufficient countervailing justification for the State's action," *Boddie*, 401 U.S. at 380-81, such ephemeral access to the court cannot be properly characterized as "meaningful" and therefore does not comport with the open courts provision and due process clause of the Maine constitution. *See* Me. Const. art. I, §§ 6-A, 19. However, this is not to say that the filing requirements pursuant to 5 M.R.S. § 11002 and Rule 80C(b) will *always* deprive a pro se prisoner of his or her right to meaningful access to the judicial process. Because it is incumbent upon a pro se prisoner to recognize that, unlike represented prisoners or nonincarcerated persons, he or she has no choice but to *mail* his or her petition, it is not unconstitutionally unreasonable to require that the petition be delivered to prison authorities at least three days prior to the thirty-day filing deadline. *See* M.R. Civ. P. 6(c) (recognizing that a period of three days is generally sufficient to allow for the mailing of legal documents).

[¶19] Accordingly, a pro se prisoner's constitutional rights are only violated where—as in this case—he or she completes the prison's procedures for depositing the petition with the prison for mailing at least three days

before the last day on which the petition may be timely filed, and the petition does not reach the clerk of court until after that deadline has passed. Put simply, the filing deadline created by 5 M.R.S. § 11002(3) and Rule 80C(b) has effectively deprived Martin "of his remedy [against the Department] under color of regulating it." *Sampson*, 63 Me. at 333. This is especially so here, given that the Department—as the party against whom Martin had attempted to file his petition—was also the institution he was forced to rely upon to ensure that his petition was timely filed. *See Bennett v. Davis*, 90 Me. 102, 107, 37 A. 864 (1897) (holding a filing statute unconstitutional where it "might put the citizen at the mercy of his adversary . . . a result abhorrent to the very nature of constitutional government"); *see also Warner*, 135 S.W.3d at 685 (recognizing "the unique problem that arises when one party is forced to rely on his opposing party to ensure pleadings are timely filed" (quotation marks omitted)).

[¶20] Accordingly, the State's argument on appeal—that Martin's constitutional rights were not violated because he received the "ample time" of twenty-three days to petition the court—misapprehends the constitutional interest at stake, as such a standard would nonetheless result in Martin losing all control over his petition upon delivery to prison authorities and would

permit the Department to delay his petition for an indeterminate period in order to ensure his inability to pursue a claim against it. Moreover, although the State identifies our previous opinions in cases such as *Giberson v. Quinn*, 445 A.2d 1007, 1008-09 (Me. 1982), for the proposition that the open courts provision does not prohibit a reasonable time limit for filing a judicial action, those cases and the rationale underlying them are inapposite to the situation at hand. Unlike Martin, the plaintiff in *Giberson* was not impermissibly forced to rely on his opposing party to ensure that his pleadings were timely filed. *See generally id.*

[¶21] For the foregoing reasons, we adopt the prisoner mailbox rule for any unrepresented prisoner whose Rule 80C petition, having been delivered to the Department of Corrections at least three days before the last day on which the petition may be timely filed, arrives at the clerk of court after that deadline has expired.

The entry is:

> Judgment vacated. Remanded to the Superior Court for reinstatement of the 80C petition.

E. James Burke, Esq., and Alec Youngblood, Stud. Atty. (orally), Cumberland Legal Aid Clinic, Portland, for appellant Charles M. Martin

Janet T. Mills, Attorney General, and James E. Fortin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Knox County Superior Court docket number AP-2016-21
FOR CLERK REFERENCE ONLY