MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 117
Docket:      Ken-18-306
Argued:      April 10, 2019
Decided:     July 23, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

AUBREY ARMSTRONG

HJELM, J.

[¶1]  Aubrey Armstrong was charged with murder, felony murder, and robbery in connection with a drug-related homicide.  After a jury-waived trial, the court (Kennebec County, *Billings, J.*) acquitted Armstrong of murder but found him guilty of the other two charges.  Armstrong appeals the resulting judgment, contending that the court abused its discretion by excluding evidence of hearsay statements made by a witness who was not available to testify at trial, *see* M.R. Evid. 804(b)(3), and that his constitutional protection from double jeopardy precludes a conviction for both felony murder and the underlying felony of robbery, *see* U.S. Const. amend. V; Me. Const. art. I, § 8.  Although Armstrong did not raise the double jeopardy issue in the trial court, the State agrees with Armstrong on that point.  We conclude that the court

2

committed no error in its evidentiary ruling at issue here, but we vacate the judgment and remand for further post-trial proceedings, including resentencing limited to one count.

## I. BACKGROUND

[¶2]  The following facts are drawn from the court's findings, which are supported by the evidence, and from the trial record viewed in the light most favorable to the State.  *See State v. Fournier*, 2019 ME 28, ¶ 2, 203 A.3d 801.

[¶3]   On the night of November 23, 2015, several police officers responded to a report of a disturbance in an apartment building in Augusta. The officers entered the building, and, as they ascended the stairs to an apartment on the fourth floor, they heard banging from the apartment, including a sound suggestive of an object being dropped.  When the officers reached the apartment, one of them knocked on the door several times.  The officers heard movement inside, and after several moments the apartment door was opened by a male later identified as Damik Davis, who was Armstrong's constant companion—and enforcer.  Davis was breathing heavily, sweating profusely, and had blood on one of his hands.

[¶4]  From the doorway, the officers could see that the apartment was in disarray.  It appeared that there was blood on the walls, on the floor, and on a survey stake; a broken chair was on the floor; and clothing was strewn about.  As the officers spoke with Davis, they observed a person—whom they believed to be male and who was wearing a hooded sweatshirt covering most of his head—walk behind Davis and then out of view.

[¶5]  An officer asked Davis about the whereabouts of the apartment's residents, Zina Fritze and Michael Sean McQuade, who were long-term partners and had a child together.  Davis called for Fritze and then walked into the kitchen and out of the officers' sight.  One of the officers went downstairs and around to the back of the building, where he observed Davis running from the building.[1]  The officer also discovered a white cell phone on the ground, which was later collected as evidence and identified as Armstrong's.  Meanwhile, the other officer entered the apartment and discovered the body of a man in the bedroom.  The man's hands were bound behind his back by ligatures, his ankles were also bound, and his face was bloody and swollen.  A forensic pathologist later determined that the cause of death was multiple blunt force injuries to the

---

[1]  Using a discarded sweatshirt recovered from the back staircase and believed to have been worn by Davis, the officers and a tracking dog eventually found Davis in the area, and he was then arrested.

4

head—including injuries to the victim's brain, which were so extensive as to be fatal by themselves—and to his neck, including a fractured hyoid bone.

[¶6]   Fritze and McQuade went into hiding until, two days after the homicide, they were found and surrendered to the police.   After Fritze was given *Miranda* warnings, *see Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), she was interviewed about the murder by four detectives.   Following the interview, Fritze accompanied detectives to the scene of the murder and showed the officers what she claimed had occurred.

[¶7]   In January of 2016, Armstrong was indicted for intentional or knowing or depraved indifference murder, 17-A M.R.S. § 201(1)(A), (B) (2018); felony murder (Class A), 17-A M.R.S. § 202(1) (2018); and robbery (Class A), 17-A M.R.S. § 651(1)(C) (2018).   Davis, McQuade, and Fritze were charged with the same crimes.   On January 27, 2016, while being held on the charges against her, Fritze committed suicide.

[¶8]   Armstrong was arrested in New York pursuant to a warrant and, after being extradited to Maine, pleaded not guilty to each charge.   The cases against Armstrong, Davis, and McQuade were joined for trial, *see* M.R.U. Crim. P. 8(b), but McQuade and Davis each subsequently pleaded guilty to felony murder and robbery, and each agreed to cooperate with the State.

Armstrong waived his right to a jury trial, and the court held a six-day bench trial in May of 2018.

[¶9]  The only eyewitness to the crime who testified was McQuade.[2]  He told the court that on the night of the murder, while he, Armstrong, Davis, and Fritze were at a neighbor's apartment, Armstrong stated that he wanted to rob the victim of drugs.  The four developed a plan to commit the robbery, which resulted in luring the victim to the apartment where the four conspirators were present.  All of them then traveled in the victim's van to McQuade and Fritze's nearby apartment.  Fritze, Davis, and the victim entered the apartment using the front stairway; McQuade and Armstrong went into the apartment by a rear staircase and entrance.  Once inside, Fritze went into the kitchen and McQuade went into the bedroom, and the other three remained in the living room.  From the bedroom, McQuade saw Armstrong "smash[]" the victim across the head with a bottle, and Davis hit the victim on the head with a chair.  McQuade testified that as Armstrong and Davis continued to assault the victim, he—McQuade—went into the kitchen and told Fritze that they needed to leave. Armstrong continued to beat the victim with what McQuade described as a "property stick" as Davis tried to stop Armstrong.

---

[2] Neither party called Davis as a witness.

6

[¶10] According to McQuade, when the police knocked on the apartment door, Fritze and McQuade fled from the apartment through the back door. As they ran down the back stairs, McQuade saw Armstrong behind them. The three ran through nearby woods to the neighbor's apartment where they had met the victim earlier that night. McQuade testified that Armstrong and the neighbor made statements that he perceived as threats to him and his child, and that Armstrong instructed McQuade not to say anything about him.[3] Because of their fear of Armstrong, and knowing the police were looking for them, McQuade and Fritze hid for two days after the murder before they were discovered and arrested.

[¶11] During the trial, Armstrong offered in evidence a transcript of Fritze's November 25, 2015, interview conducted by detectives, as well as the video of Fritze's reenactment of the incident. Armstrong contended that Fritze's hearsay statements were admissible pursuant to Maine Rule of Evidence 804(b)(3) as declarations she had made against her penal interest. At the court's suggestion, in order to clarify the record, Armstrong later distilled

---

[3] In addition to McQuade's testimony about threats he attributed to Armstrong, Armstrong's then-girlfriend testified that she felt threatened or tricked into fleeing with him to New York immediately after the murder, and the girlfriend's mother testified that Armstrong threatened to "kill [them] all" if she told police that he had been hiding from police in her apartment.

the lengthy statements into a more focused proffer that identified the portions of the statements he sought to enter in evidence.

[¶12]  As described in the proffer, Fritze claimed that the victim had offered to give her drugs if she allowed him to use her apartment to sell drugs to Davis.  She, Davis, McQuade, and the victim drove to her apartment, and Fritze, Davis, and the victim went upstairs, leaving McQuade behind.  Fritze—who claimed that she could hear but not see what was happening in the apartment—told the detectives that Davis and the victim began arguing and that the argument escalated into violence.  She said that Davis threw a rocking chair at the victim, causing the victim to stumble into a wall, and that "it sounded like somebody got hit and then it sounded like somebody getting choked out."  She told the detectives that a folding chair was then thrown at the victim and that Davis began to assault the victim.  Fritze said that after the incident, Davis was sweaty, and it looked as though his knuckles were injured.  Fritze also stated that while she was in the apartment, she wore a hood over her head.  The offer of proof did not contain any statements by Fritze that Armstrong was present when the murder was committed or that he was involved in the crime.

[¶13]  After analyzing the trustworthiness of Fritze's statements under the four-part test established in *State v. Cochran*, 2000 ME 78, ¶ 12, 749 A.2d 1274, and *State v. Small*, 2003 ME 107, ¶ 25, 830 A.2d 423, the court excluded the statements made by Fritze during both the interview and the walk-through at the apartment, concluding that Fritze had a "probable motive to falsify" when she made those statements to investigators.

[¶14]  At the conclusion of the trial, the court found Armstrong guilty of felony murder and robbery but acquitted him of murder.  The court found that Davis, McQuade, and Fritze were present when the victim was killed.  The court also found that, contrary to Armstrong's theory of the case, Armstrong was at the scene of the crime as well.  The court based that finding in part on the discovery of the cell phone—which the court found was Armstrong's—behind the apartment building where the murder took place, and on his relationship with Davis, where the two were often together and Davis served as Armstrong's protection.  The court further found that Armstrong actively participated in both planning and committing the robbery and that the victim's death was a reasonably foreseeable consequence of the robbery.

[¶15]  After a sentencing hearing held two months later, on the charge of felony murder, the court imposed a fully unsuspended prison term of

thirty years, and on the robbery charge a concurrent sentence of thirty years with one year suspended and four years of probation. Armstrong timely appealed. *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶16] Armstrong argues on appeal that the court abused its discretion by excluding hearsay evidence of Fritze's statements to investigators because, he asserts, those statements were corroborated by circumstances clearly indicating that the statements are trustworthy as Maine Rule of Evidence 804(b)(3) requires for such evidence to be admissible. Armstrong also argues that his convictions for both felony murder and robbery violate his double jeopardy rights. *See* U.S. Const. amend. V; Me. Const. art. I, § 8. We address these arguments in turn.

A.    Rule 804(b)(3)

[¶17]    Maine Rule of Evidence 804(b)(3)[4] allows the admission of hearsay statements made against the declarant's interest if the following

---

[4] Maine Rule of Evidence 804(b)(3) states:

*Statement against interest.* A statement—except, in a criminal case, for a statement or confession made by a defendant or other person implicating both the declarant and the accused that is offered against the accused—that:

(A) A reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or

foundational elements are satisfied: (1) the declarant is not available to testify within the meaning of Rule 804(a); (2) the statement tends to subject the declarant to criminal liability to a degree that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true; and (3) the statement is corroborated by circumstances that "clearly" indicate its trustworthiness. *Cochran*, 2000 ME 78, ¶ 11, 749 A.2d 1274; *see* M.R. Evid. 804(b)(3). Here, the parties do not dispute that the first two conditions for admissibility were met—Fritze was unavailable to testify because she died before Armstrong's trial was held, and her statements about her involvement in the crimes were sufficiently self-inculpatory to constitute a statement against her penal interest. The issue presented here centers on whether her statements to investigators were supported by

---

criminal liability or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace; and

(B) Is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

The restyling of the Maine Rules of Evidence to mirror the Federal Rules of Evidence did not change their substance. *See* M.R. Evid. Advisory Committee's Note to 2015 amend. ("The purpose of the restyling is to make the rules clearer and easier of application by adoption of simple and consistent language, style, and format conventions and elimination of ambiguous or obsolete terminology. The recommendations for restyling are intended to preserve the substance of the respective rules without change, but present the respective Maine rules in the language and format consistent with their restyled counterparts in the Federal Rules of Evidence.").

corroborating circumstances that clearly indicate the trustworthiness of the statements.

[¶18]  We have stated that in order to make that assessment of whether the hearsay statement bears clear indicia of trustworthiness,

courts should consider the following four additional factors:

1.  the time of the declaration and the party to whom it was made;

2.  the existence of corroborating evidence in the case;

3.  whether the declaration is inherently inconsistent with the accused's guilt; and

4.  whether at the time of the incriminating statement the declarant had any probable motive to falsify.

*Small*, 2003 ME 107, ¶ 25, 830 A.2d 423.

[¶19]   Here, the court concluded that the first and third of the trustworthiness factors weighed in favor of admissibility—Fritze made statements to investigators close in time to the events she described, and her statements were inconsistent with Armstrong's guilt because she did not place him at the scene of the homicide.  As to the second factor, the court observed that there was evidence that both corroborated and conflicted with certain

12

aspects of her account.[5] Neither party contests these parts of the court's analysis.

[¶20] The court went on, however, to place significant weight on the fourth of the trustworthiness factors, namely, whether Fritze had a motive to lie to investigators when she made the statements to them. Based on the trial evidence, including McQuade's testimony, the court found that during the two days between the murder and her arrest, Fritze and McQuade were in hiding. She knew she was being sought by the police, and because of serious threats that they attributed to Armstrong, she and McQuade were unwilling to inculpate Armstrong. With support in McQuade's testimony, the court found that they had concocted a story that would minimize their involvement in the murder and—important to the question of the admissibility of the evidence— keep Armstrong out of the narrative. The court concluded that Fritze's statements, which, by omission, were purportedly exculpatory as to Armstrong,

---

[5] Evidence that supports Fritze's version of events included the presence of the victim's DNA on Davis's sweatshirt, a folding chair, and the wooden stake. Evidence that might have contradicted her account included the presence of the victim's DNA on McQuade's coat and Fritze's DNA in the rear pocket of the victim's pants, as well as Armstrong's cell phone behind the apartment building. When Armstrong sought to introduce Fritze's hearsay statements, the State had already presented evidence that the cell phone found near the crime scene was Armstrong's, thereby creating a significant contradiction with Fritze's statement to the police that failed to mention Armstrong's presence at the murder scene.

were not supported by circumstances that clearly showed the statements to be trustworthy.

[¶21] "The question of admissibility pursuant to Rule 804(b)(3) . . . is committed to the discretion of the trial court." *State v. Boucher*, 652 A.2d 76, 79 (Me. 1994); *see also* Field & Murray, *Maine Evidence* § 804.4 at 521 (6th ed. 2007) ("The determination of whether the necessary corroborating evidence is present involves the exercise of a sound discretion by the trial court."). Armstrong, as the proponent of the evidence, had the burden to develop the foundation that would allow the court to admit the evidence. *See KeyBank Nat'l Ass'n v. Estate of Quint*, 2017 ME 237, ¶ 13, 176 A.3d 717. Here, the court's analysis correctly invoked the legal framework established by the rule and applicable caselaw. Then, although concluding that several of the trustworthiness factors favored admissibility, the court appropriately placed significant weight on what was, in the circumstances of this case, the most important consideration—whether Fritze was motivated to falsify the information she provided to investigators, and in particular any statements about whether Armstrong was involved in the homicide.

[¶22] In criminal proceedings, the purpose of requiring the proponent of hearsay evidence to make a foundational showing of a *clear* indication that the

hearsay is trustworthy is to protect against the use of the declaration—made by a witness who is not available to testify—to falsely exonerate an accused. *See State v. Dobbins*, 2019 ME 116, ¶ 22, --- A.3d ---. Here, the court was presented with evidence that Fritze and McQuade had witnessed a brutal murder and that they both reasonably believed that Armstrong—who was still at large when Fritze spoke with investigators—posed a threat to her, McQuade, and their child. The evidence also indicated that, under these circumstances, Fritze and McQuade planned to provide the police with a story that pointedly did not implicate Armstrong. On this record, the court did not err in its ultimate determination that Armstrong failed to present foundational evidence of corroborating circumstances clearly indicating the trustworthiness of the hearsay statements, offered to show that Armstrong was not involved in the crimes.

[¶23] Given the court's supported determination that Fritze's statements were not clearly supported by indicia of trustworthiness, admission of Fritze's hearsay statements would have run contrary to the truth-seeking function of Rule 804(b)(3). The court therefore did not err, while exercising its gatekeeping function, by excluding that evidence.[6]

---

[6] Armstrong also summarily argues that his constitutional right to present a defense should have been "specifically considered" by the court when it determined whether Fritze's statements were

B.     Double Jeopardy

[¶24]  Armstrong also asserts that the convictions for both robbery and felony murder violate the double jeopardy clauses of the federal and state constitutions, *see* U.S. Const. amend. V; Me. Const. art. I, § 8, because robbery is "the same" offense as felony murder pursuant to the same-elements test established in the seminal case of *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  *See also State v. Martinelli*, 2017 ME 217, ¶ 7, 175 A.3d 636.  As a corollary to this argument on appeal, he asserts that the sentences were illegally excessive because they were predicated on two crimes instead of one.

[¶25]  Neither party raised this issue in the trial court.  Nonetheless, the State acknowledges that Armstrong is correct on these points and confesses what must be seen as obvious error.  *See* M.R.U. Crim. P. 52(b); *State v. Lyon*, 2016 ME 22, ¶ 6, 131 A.3d 918; *see also State v. Robinson*, 1999 ME 86, ¶ 14, 730 A.2d 684 (stating that "the right to be free from double jeopardy . . . is a

---

admissible. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense.").  Armstrong has failed to present a developed argument on this point, and he has therefore failed to preserve it for our review. *See State v. Jandreau*, 2017 ME 44, ¶ 14, 157 A.3d 239.  Nonetheless, on the merits, exclusion of Fritze's statements did not violate Armstrong's constitutional rights because that evidentiary ruling was neither arbitrary nor disproportionate, and it served legitimate interests in the criminal trial process. *See Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) ("[T]he Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote."); *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (stating that the right to present a defense "is not unlimited, but rather is subject to reasonable restrictions").

fundamental right of all citizens, and the law on the issue is clear and well established."); *Whalen v. United States*, 445 U.S. 684, 686, 693-94 (1980) (in a prosecution for felony murder and an underlying felony, applying double jeopardy protections based on the *Blockburger* same-elements test where the felony murder may be proved—as with 17-A M.R.S. § 202(1)—based on either the commission of the underlying felony or on an attempt to commit the underlying felony).

[¶26] Consequently, we remand for further post-trial proceedings where the court may take appropriate action to eliminate the double jeopardy effect arising from the two charges by merging the two counts into a single defined count, which has the same effect as dismissing one count, *see State v. Murphy*, 2015 ME 62, ¶ 28, 124 A.3d 647, and then imposing sentence on the merged count.

The entry is:

> Judgment vacated. Remanded for further post-trial proceedings consistent with this opinion.

Scott F. Hess, Esq. (orally), the Law Office of Scott F. Hess, LLC, Augusta, for appellant Aubrey Armstrong

Aaron M. Frey, Attorney General and Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2016-172
FOR CLERK REFERENCE ONLY