MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 12
Docket:        Ken-23-419
Argued:        November 14, 2024
Decided:       February 11, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

AUBREY ARMSTRONG

v.

STATE OF MAINE

CONNORS, J.

[¶1]  Aubrey Armstrong appeals from a judgment of the post-conviction review (PCR) court (Kennebec County, *Mallonee, J.*) summarily dismissing his petition for post-conviction review for failure to comply with the one-year filing deadline.  *See* 15 M.R.S. § 2128-B(1)(A) (2024); M.R.U. Crim. P. 70(b)(3).  We conclude that Armstrong waived his argument regarding the timeliness of his petition and therefore vacate the order granting a certificate of probable cause, dismissing the appeal as improvidently granted.  *See Rich v. State*, 658 A.2d 1065, 1065 (Me. 1995).

## I.  BACKGROUND

[¶2]  Following a bench trial in July 2018, Armstrong was convicted of felony murder and robbery but acquitted of murder.  *See State v. Armstrong*,

2019 ME 117, ¶¶ 2-14, 212 A.3d 856 (discussing the facts supporting Aubrey Armstrong's conviction). The court sentenced Armstrong to a thirty-year term of imprisonment for the felony murder charge and a concurrent thirty-year term of imprisonment with all but twenty-nine years suspended and four years of probation for the robbery charge. *Id.* ¶ 15. Armstrong appealed. *Id.*

[¶3] On appeal, we concluded (and the State conceded) that the simultaneous convictions for felony murder and robbery violated the double jeopardy clause of the federal and state constitutions. *See id.* ¶¶ 24-26; U.S. Const. amend. V; Me. Const. art. I, § 8; *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *State v. Martinelli*, 2017 ME 217, ¶ 7, 175 A.3d 636. We vacated the judgment and remanded to the trial court for further post-trial proceedings to eliminate the double jeopardy effect arising from the convictions "by merging the two counts into a single defined count . . . and then imposing sentence on the merged count." *Armstrong*, 2019 ME 117, ¶ 26, 212 A.3d 856 (citation omitted).

[¶4] On remand, the trial court allowed the State to dismiss the robbery count and denied Armstrong's request to hold a second full sentencing hearing. *State v. Armstrong*, 2020 ME 97, ¶¶ 4-5, 237 A.3d 185. Instead, the court entered an amended judgment without resentencing Armstrong on the merged

count. *Id.* Armstrong appealed from the amended judgment and filed an application to allow an appeal of his sentence, which the Sentence Review Panel granted. *Id.* ¶ 5. On appeal, we again vacated the judgment and remanded for resentencing on the merged count because it was necessary for the court to perform a separate sentencing analysis. *Id.* ¶¶ 14-15.

[¶5] Following a hearing, the trial court resentenced Armstrong on the merged count to a thirty-year term of imprisonment. Armstrong again appealed the judgment of conviction and filed an application to allow an appeal of his sentence. We denied the application on November 5, 2021, and affirmed the judgment of conviction on the merged count on June 7, 2022. *State v. Armstrong*, Mem-22-53 (June 7, 2022).

[¶6] On April 10, 2023, Armstrong filed his first petition for post-conviction review and a motion for appointment of counsel. On May 16, 2023, the PCR court summarily dismissed that petition for failing to allege any cognizable grounds upon which post-conviction relief could be granted. Because the petition was summarily dismissed, the court also denied Armstrong's motion for appointment of counsel. *See* M.R.U. Crim. P. 69(a). After the dismissal, on June 28, 2023, Armstrong filed a "motion for allowance of extra time to file notice of appeal until petitioner['s] motion for

4

reconsideration is ruled on." Armstrong also filed a letter titled "Request for Reconsideration of a motion to dismiss." The record indicates that the PCR court likely treated this letter as a motion for reconsideration, and on July 13, 2023, the court denied both motions.

[¶7]   On June 29, 2023, almost thirteen months after we affirmed Armstrong's conviction, he filed a second petition for post-conviction review, alleging ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and prosecutorial misconduct, and again requested assignment of counsel to assist with his post-conviction litigation. Armstrong left Section F of his petition blank. Section F is titled "TIME FOR FILING." Subsection 1 asks a petitioner to outline the dates relevant to the petition. Subsection 2 asks the petitioner whether the post-conviction petition is "being brought more than one year after the most recent date listed." If the petitioner answers yes in subsection 2, the petitioner is instructed to explain the delayed filing in subsection 3.

[¶8]   In reviewing whether Armstrong's June 29 petition warranted assignment by the Chief Justice of the Superior Court or a Designee, *see* M.R.U. Crim. P. 69(a); 15 M.R.S. §§ 2124-2126, 2128, 2128-B (2024), the PCR court concluded that first, Armstrong was currently incarcerated and thus under a

present "restraint or impediment," *see* 15 M.R.S. § 2124(1)(A); second, Armstrong's alleged grounds for relief raised cognizable grounds upon which post-conviction relief could be granted, *see* 15 M.R.S. § 2125; but third, Armstrong did not file his petition within the one-year filing deadline imposed by 15 M.R.S. § 2128-B(1)(A).[1]

[¶9]  The PCR court dismissed the June 29 petition as untimely under M.R.U. Crim. P. 70(b)(3).  Because the court summarily dismissed the petition, the court also dismissed Armstrong's motion to assign counsel.  Armstrong timely appealed and sought a certificate of probable cause to pursue full appellate review.  *See* M.R. App. P. 2B(b)(1); M.R. App. P. 19(a)(2)(F); 15 M.R.S. § 2131 (2024).

[¶10]  In his memorandum seeking a certificate of probable cause, Armstrong argued that he did not have access to a law library; the PCR court's delay in adjudicating his motion for reconsideration caused him to not have enough time to organize the filing of his second petition; and he had to wait two

---

[1] A petition for post-conviction review must be filed within the one-year period that begins on the latest of (1) the date of final disposition on direct appeal or lapsing of the deadline for filing an appeal, (2) the date of a newly recognized and retroactive constitutional right, or (3) the date when the exercise of due diligence could have discovered the factual predicate of the claim.  *See* 15 M.R.S. § 2128-B(1) (2024); *see also* L.D. 1533, Summary (118th Legis. 1997) (stating that the filing deadline in section 2128-B is modeled after the federal habeas corpus statute).

6

weeks for a notary to be available at the prison to certify his second petition, which should therefore be considered timely under the prisoner mailbox rule.[2]

[¶11] On April 2, 2024, we granted Armstrong a certificate of probable cause for full appellate review on the following question: whether the PCR court erred by concluding that Armstrong's petition was untimely filed and summarily dismissing it pursuant to M.R.U. Crim P. 70(b)(3). This Court appointed Armstrong counsel on April 3, and briefing from the parties followed.

## II. DISCUSSION

[¶12] In his briefing to this Court, with the assistance of counsel, Armstrong argues that the doctrine of equitable tolling should apply to his petition for post-conviction review because he diligently pursued his rights but extraordinary circumstances that were out of his control prevented him from

---

[2] In the Maine Rule of Civil Procedure 80C context, we established the prisoner mailbox rule that provides that if an unrepresented prisoner delivers a Rule 80C petition to the Department of Corrections "at least three days before the last day on which the petition may be timely filed, [and the petition] arrives at the clerk of court after that deadline has expired," then the petition is timely. *Martin v. Dep't of Corr.*, 2018 ME 103, ¶ 21, 190 A.3d 237. The United States Supreme Court has established a federal prisoner mailbox rule that provides that a pro se notice of appeal from the denial of a 28 U.S.C. § 2254 petition for a writ of habeas corpus is deemed filed at the moment of delivery to prison authorities. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

In this instance, however, the filing deadline was June 7, 2023, and Armstrong alleges that he began filling out the petition on June 2 and had it notarized on June 15. The PCR court received the petition and docketed it on June 29, 2023. This means his date of delivery to prison officials was at the earliest June 15, which is eight days after the one-year filing deadline under 15 M.R.S § 2128-B(1)(A) (2024). Even if we were to adopt the prisoner mailbox rule for petitions for post-conviction review, Armstrong's filing would still be untimely.

making a timely filing. The State argues that the PCR court properly dismissed Armstrong's petition and that Armstrong waived his equitable tolling argument by not raising it below. In his reply, Armstrong argues that he could not have waived his equitable tolling argument because he never had a meaningful opportunity to raise it with the assistance of counsel.

[¶13] A party must ordinarily present an issue to the original tribunal to preserve that issue for appellate review. The Massachusetts Supreme Judicial Court discussed this issue at some length in *Spence v. Reeder*, 416 N.E.2d 914, 922-23 (Mass. 1981). There, the Court explained that in civil litigation, a waiver precluding appellate review can occur by the simple failure to assert a right, while, in contrast, in the criminal appeal context, waiver precluding appellate review must typically be knowing and voluntary. *Id.* But the latter test does not apply to every waiver in the criminal context; "[n]ot every asserted waiver of a constitutional right by a criminal defendant has been tested by the knowing and intelligent waiver standard; the requirement of a knowing and intelligent waiver has been applied generally only to the constitutional guarantees of a fair trial." *Id.*; *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 235 (1973) ("Our cases do not reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional

protection."). Thus, in *Schneckloth*, the Supreme Court concluded that proof of knowledge of the right to refuse consent to a search was not a necessary prerequisite to demonstrating a "voluntary" consent. *Id.* at 232-33. In so reasoning, the Supreme Court contrasted the structured atmosphere of a trial and custodial interrogation with a typical consent search. *Id.* at 231-32.

[¶14]  Here, the issue presented is not even a failure to invoke a constitutional protection. Armstrong is asking us to establish a court-created exception to a statutory deadline imposed by the Legislature. He asks us to do so in a context in which no constraints were imposed on him as to how he should complete his petition; the question on the form was factual, involving no legal analysis; and the fairness of the review process was not undermined.

[¶15]  In federal habeas corpus proceedings, equitable tolling "is limited to rare and exceptional cases; equitable tolling is the exception rather than the rule . . . [and] resort to its prophylaxis is deemed justified only in extraordinary circumstances." *Holmes v. Spencer*, 685 F.3d 51, 62 (1st Cir. 2012) (quotation marks omitted). We have never indicated that we have adopted any permutation of this rare doctrine in the post-conviction context, and we decline to do so here, where the petitioner forewent the opportunity to aver facts that would have alerted the PCR court to the issue now on appeal. *See Brackett v.*

*United States*, 270 F.3d 60, 71 (1st Cir. 2001) (concluding that the issue regarding whether the court should adopt the doctrine of equitable tolling in the federal habeas context was waived because it was not presented below), *abrogated on other grounds by Johnson v. United States*, 544 U.S. 295, 302 (2005).

[¶16]  Although self-represented litigants are held to the same standard as represented parties, in his petition, Armstrong did not need to explain the doctrine of equitable tolling.  He did, however, need to alert the court to the late date for his filing and assert a factual justification so that the PCR court would have the opportunity to address the issue.  Simply put, the petition form instructed Armstrong to explain why he did not file the petition within one year, and he offered no explanation.  His failure to do so constitutes waiver precluding appellate review, and we leave for another day whether equitable tolling applies to petitions for post-conviction review and, if it does, what circumstances justify its application.[3]

---

[3]  Maine Rule of Unified Criminal Procedure 52(b) provides that "[o]bvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Thus, as a threshold matter, the ability to address an alleged error or defect is discretionary on our part. *See State v. Pabon,* 2011 ME 100, ¶ 26, 28 A.3d 1147.  Here, as noted above, no error or defect in the ordinary sense of the words has been identified.  Rather, Armstrong is asking us to craft a new rule of estoppel to avoid a statutory deadline.

In any event, even if we did review whether it was an obvious error for the trial court not to recognize a doctrine never previously established in our case law, and even if we adopted an estoppel

The entry is:

> Order granting the certificate of probable cause vacated.

---

Michelle R. King, Esq. (orally), Thistle Weaver & Morris, Portland for appellant Aubrey Armstrong

Aaron M. Frey, Attorney General, and Katie Sibley, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2023-1110
FOR CLERK REFERENCE ONLY

---

rule similar to the rule applied by federal courts in habeas petitions, Armstrong's circumstances would not meet the federal standard. *See Holland v. Fla.*, 560 U.S. 631, 649 (2010).