STATE OF MAINE
Penobscot, ss

SUPERIOR COURT
Civil Action
Docket No. CV-20-0055

Glen Plourde,

Plaintiff,

v.

Dirigo Counseling Clinic LLC,

Megann Holland,

Alan Algee,

Marianne Lynch,

Stephen Burlock,

State of Maine,

Penobscot County District Attorney's Office,

Defendants.

**ORDER GRANTING D.A. LYNCH (including the Penobscot County District Attorney's Office), A.D.A. BURLOCK AND THE STATE OF MAINE'S MOTION TO DISMISS**

The State of Maine, District Attorney of Prosecutorial District 5 Marianne

Lynch,[1] and Assistant District Attorney Stephen Burlock (hereinafter referred to

collectively as "the Defendants" or "Defendants"[2]) have moved to dismiss plaintiff

---

[1] Plaintiff's complaint also names the "Penobscot County District Attorney's Office" as a defendant. The District Attorney's office is not a legally separate entity from the District Attorney; therefore, Plaintiff's claims against the District Attorney's office are considered duplicative of claims brought against District Attorney Lynch. *See generally* 30 M.R.S. §§ 281-290 (2020).

[2] There are other defendants in this case as well. To the extent Defendants Holland, Algee, and Dirigo Counseling Clinic LLC are referenced in this Order, they will be specifically named. Their Motion to Dismiss is the subject of a separate Order.

1

Glen Plourde's complaint against them pursuant to M.R. Civ. P. 12(b)(6). The court grants the Defendants' motion.

## BACKGROUND

Plaintiff commenced this case by filing a complaint[3] in the Superior Court on April 23, 2020. Before serving the defendants, Plaintiff filed an amended complaint on July 1, 2020. The following background summarizes the allegations made in Plaintiff's amended complaint (hereinafter referred to as the "complaint").

Plaintiff was charged with domestic violence assault in the case docketed PENCD-CR-16-20309. Plaintiff alleges that, pursuant to a plea agreement with the Penobscot County District Attorney, he agreed to seek family counseling services. (Amend. Compl. ¶¶ 9-16.) He alleges that Dirigo Counseling Clinic, LLC was the only business providing counseling services in the Bangor area to answer its phone and accept him as a patient and therefore the only provider from which he could seek counseling services. (*Id.* ¶¶ 10-15.) Dirigo Counseling scheduled a counseling session for Plaintiff with Dirigo's family counselor, Megann Holland, for April 10, 2017. (*Id.* ¶ 21-22.) During the counseling session, Plaintiff became concerned that Ms. Holland was not a fully licensed and qualified family counselor because Ms. Holland asked questions that he felt were improper for a family counseling session and also because, based on his reading of Ms. Holland's resume, Ms. Holland did not have a psychology

---

[3] Plaintiff filed a very similar complaint in the federal district court for the District of Maine in April 2020, *Plourde v. Maine*, No. 1:20-CV-00137-LEW, 2020 WL 2600969 (D. Me. May 21, 2020). Citing the implausibility of Plaintiff's allegations, the federal district court concluded that the "allegations [in the complaint] cannot reasonably be construed to assert a substantial federal claim" and dismissed the complaint *sua sponte* due to lack of subject matter jurisdiction. *Id.* at *4-5. The district court also warned Plaintiff that "filing restrictions may follow if he pursues further baseless or frivolous litigation." *Id.* at *5.

2

degree or the necessary professional experience. (*Id.* ¶¶ 23-35.) Plaintiff also alleges that Ms. Holland was dressed "provocatively" and "unprofessionally" for their session, which caused him to have further suspicions that Ms. Holland was not qualified to act as his family counselor. (*Id.* ¶ 23.)

Plaintiff met again with Ms. Holland for a counseling session on April 17, 2017. During this session, Ms. Holland allegedly asked Plaintiff numerous times if he would like to play with a piece of brown clay that was on her desk, an activity that Ms. Holland said her patients found relaxing. (*Id.* ¶¶ 38-47.) Plaintiff states that the brown clay looked like feces. (*Id.*) Plaintiff alleges that he repeatedly refused Ms. Holland's suggestion that he play with the clay, but Ms. Holland persisted in asking him to do so. (*Id.*) Plaintiff asserts that Ms. Holland's repeated inquiries about whether he would like to play with the clay were suspicious and caused him to believe that the clay was not just clay. (*Id.*) Based on this alleged incident, Plaintiff asserts that Ms. Holland subjected him to harassment, abuse, and medical malpractice. (*Id.* ¶¶ 48-49.)

Plaintiff states that he then questioned Ms. Holland about her psychology credentials and she allegedly admitted that she was "working toward her associates degree" and was not a licensed practitioner. (*Id.* ¶ 51.) Plaintiff alleges that he then asked Ms. Holland if she was collaborating with other people regarding Plaintiff's counseling sessions and that Holland responded by saying that she was discussing Plaintiff's sessions with a panel of associates. (*Id.* ¶ 52.) Plaintiff then became suspicious that Ms. Holland was discussing his case with the government or the Penobscot County District Attorney's Office. (*Id.* ¶ 53.) In response to Plaintiff's

questions on the topic, Ms. Holland allegedly stated that "there might be some government employees I discuss your case with." (*Id.* ¶ 53.) Plaintiff further states that he could hear noise from outside the room during their counseling sessions. (*Id.* ¶¶ 54-55.) Based upon that noise, he concludes that his counseling sessions with Ms. Holland were being "eavesdropped on" and Ms. Holland was allowing this eavesdropping to occur. (*Id.*)

Plaintiff additionally states that during this second counseling session, Ms. Holland said that "it was her job to produce a psychiatric diagnosis" of Plaintiff. (*Id.* ¶ 57.) Plaintiff states that this made him concerned and suspicious because he had not asked for a psychiatric diagnosis and also because the Penobscot County District Attorneys who were prosecuting his criminal case "wanted and were angling for" a psychiatric diagnosis of Plaintiff. (*Id.* ¶¶ 58-59.) Plaintiff states that the District Attorneys had moved for such a psychiatric examination in his criminal case. (*Id.* ¶ 59.) Plaintiff further alleges that he was suspicious and concerned about Holland's statement because Dirigo Counseling "is also known to work with and for" the State of Maine. (*Id.*) Based on the above allegations, Plaintiff claims that Dirigo Counseling Clinic and Megann Holland were colluding and cooperating with the State of Maine, the Penobscot County District Attorney's Office, D.A. Lynch, and A.D.A. Burlock to obtain an unauthorized psychiatric evaluation of Plaintiff. (*Id.* ¶¶ 60-64.)

After Ms. Holland allegedly stated that it was her job to produce a psychiatric diagnosis of him, Plaintiff alleges that he informed Ms. Holland that he refused to allow her to make any sort of diagnosis of him and that this was not the reason he came to Dirigo for counseling. (*Id.* ¶¶ 65-66.) Plaintiff states that Ms. Holland then

4

suggested that they cease meeting for counseling sessions; however, Plaintiff refused because of fear that stopping the counseling sessions might harm his plea agreement. (*Id.* ¶ 67.) During this conversation, Plaintiff alleges that he heard a woman's voice come from a "grey speaker" on Ms. Holland's desk which said "alright that's enough" and that Holland responded, "ok" to this voice. (*Id.* ¶¶ 69-70.)

Upon hearing this exchange, Plaintiff began questioning Ms. Holland about the voice from the speaker. (*Id.* ¶¶ 71-73.) Plaintiff alleges that Ms. Holland responded by telling Plaintiff that the speaker was connected to her phone and that Plaintiff had heard a message going to her voicemail. (*Id.* ¶ 72.) When Plaintiff continued questioning her about the speaker, Ms. Holland allegedly got up from her chair "walked aggressively" toward the speaker, picked it up, "walked aggressively" in front of Plaintiff, and "quickly" and "aggressively" "thrust" the speaker "within approximately 3-inches" of Plaintiff's face and stated "[s]ee its just a Bose speaker connected to my cellphone's voicemail!" (*Id.* ¶¶ 73-75.) Plaintiff claims that the speaker was "dangerous" and "potentially harmful" and that Ms. Holland's actions constitute "[a]ssault", "[r]eckless [e]ndangerment", and "[m]edical [m]alpractice". (*Id.* ¶¶ 76-78.)

When Plaintiff went for his next counseling session on April 24, 2017, he arrived at the clinic but found the clinic closed and that his counseling session had been canceled. (*Id.* ¶¶ 82-84.) Plaintiff states that when he called Dirigo Counseling's Executive Director, Alan Algee, that day to inquire about his appointment, Mr. Algee informed him that his counseling session had been cancelled by Ms. Holland and that Ms. Holland had sent a letter to him informing him of the cancellation. (*Id.* ¶ 86.)

5

Plaintiff then learned from Mr. Algee that Dirigo Counseling had sent the letter to the wrong address. (*Id.* ¶¶ 87-89.) Plaintiff asserts that Ms. Holland intentionally misaddressed the letter to Plaintiff. (*Id.* ¶ 90.) Due to the cancellation of the appointment and his nonreceipt of the letter, Plaintiff claims that he has suffered "unnecessary fear, anxiety, and mental anguish" as these events caused Plaintiff to believe that Penobscot County District Attorney Lynch would use this cancellation as a reason to nullify his plea agreement and resume prosecuting Plaintiff. (*Id.* ¶ 90.) Later that day Plaintiff received an email from Holland informing him that she was terminating their clinical relationship. (*Id.* ¶¶ 92-93.)

Plaintiff further states that the copies of his medical records that he received from Dirigo Counseling contain many inaccuracies and falsehoods regarding his counseling sessions. (*Id.* ¶¶ 94-96.) In particular, Plaintiff asserts that Ms. Holland described Plaintiff's behavior as "anxious, defensive, paranoid, resistant, and angry" during their counseling sessions; however, Plaintiff states that his behavior was actually "calm and collected" during the sessions. (*Id.* ¶ 95.) Plaintiff further alleges that Ms. Holland's notes misrepresented Plaintiff's reaction to the grey speaker on her desk. (*Id.* ¶ 96.) Based on these alleged facts, Plaintiff concludes that his medical records were falsified in order to cast him in a negative light and obscure Holland's medical malpractice. (*Id.* ¶ 98.)

Plaintiff's complaint continues and makes additional allegations directed against District Attorney (D.A.) Lynch and Assistant District Attorney (A.D.A.) Burlock. Plaintiff states that in the criminal case against him, PENCD-CR-16-20309, D.A. Lynch was representing the State and filed a motion to compel a forensic

6

examination of Plaintiff. (*Id.* ¶ 100.) The complaint states that he appeared for a court hearing in this case and was told by a court clerk that D.A. Lynch wanted to speak with him in her office. (*Id.* ¶ 102.) Because of Plaintiff's concerns about meeting in her office, D.A. Lynch met with Plaintiff in the lobby and told him that his case was dismissed. (*Id.* ¶¶ 103-104.) He states that this dismissal prevented him from having an opportunity to argue his motions in that case before the court and states that if he had been allowed to argue his motions it "would have been highly beneficial" to him and "highly detrimental" to D.A. Lynch and other Defendants. (*Id.* ¶ 105.) Additionally, Plaintiff states that he was never given an opportunity to review medical information that D.A. Lynch allegedly received from Dirigo Counseling. (*Id.* ¶ 106.) He then states that D.A. Lynch stated in her dismissal of his criminal case that "Defendant complied with agreement to seek mental health treatment"; Plaintiff is suspicious of this and alleges that "Lynch should have had no way of knowing that". (*Id.* ¶ 107.)

Plaintiff further alleges that A.D.A. Burlock is a Federal Bureau of Investigation Agent and has been spying on Plaintiff. (*Id.* ¶ 108-115.) The complaint states that Plaintiff has regularly observed A.D.A. Burlock "extremely conspicuously" entering and leaving the apartment directly across from his apartment. (*Id.* ¶ 108.) Based on his allegation, Plaintiff claims that A.D.A. Burlock has been stalking him on a near daily basis. (*Id.* ¶¶ 112, 118.) Plaintiff also adds that he believes that the State of Maine was "illegally receiving live updates" of Plaintiff's counseling sessions at Dirigo Counseling. (*Id.* ¶ 118.)

7

Based on the foregoing and other allegations, Plaintiff's complaint raises a plethora of claims against the State of Maine, D.A. Lynch, and A.D.A. Burlock which are set forth in 18 counts. His causes of action include attorney malpractice, statutory actions for violations of his constitutional rights, wrongful disclosure of health care information, and various claims brought under the Maine Criminal Code. Plaintiff specifically states that he is suing D.A. Lynch and A.D.A. Burlock in both their official capacities and as private individuals.

## STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the complaint. *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). In evaluating a motion to dismiss brought under Rule 12(b)(6), the court does not adjudicate the facts; instead, the court treats the factual allegations in the complaint as true and evaluates these allegations in the light most favorable to the plaintiff to determine if the complaint sets forth the "elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Argereow v. Weisberg*, 2018 ME 140, ¶ 12, 195 A.3d 1210; *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141. The complaint does not need to "identify the particular legal theories that will be relied upon, but it must describe the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief." *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823. Thus, a plaintiff may not proceed to litigate a cause of action if the plaintiff's complaint "has failed to allege facts with sufficient particularity so that if true, the facts would satisfy the

8

elements of a cause of action." *America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, 61 A.3d 1249. Merely reciting the legal elements of a claim is insufficient. *Id.*

A complaint's allegations must be set forth in a "simple, concise, and direct" manner. M.R. Civ. P. 8. In examining the complaint, the court is not bound to accept the complaint's legal conclusions as true. *Seacoast Hangar Condo. II Assoc. v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166; *Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 23, 192 A.3d 589 (holding that a plaintiff's complaint was legally deficient where his complaint offered only conclusory allegations without particular facts to support each element of his cause of action). A dismissal will not be granted unless "it appears beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Argereow*, 2018 ME 140, ¶ 12, 195 A.3d 1210; *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993) (the court's inquiry on a motion to dismiss for failure to state a claim "tests the legal sufficiency of the allegations in a complaint, not the sufficiency of the evidence the plaintiffs are able to present.")

ANALYSIS

**A. Maine Criminal Code (Counts 3, 5, 7, 9, 11, 13, 14, 15, 17, 23, 24)**

In counts 3, 5, 7, 9, 11, 13, 14, 15, 17, 23, and 24 of the complaint, Plaintiff alleges that Defendants are liable to Plaintiff for violating various sections of the Maine Criminal Code, Title 17-A. Defendants argue that all of these claims must be dismissed because the Maine Criminal Code does not provide a private cause of action for violations of the Code. Defendants are correct. "There is no private, civil remedy for alleged violations of the Maine Criminal Code," and Plaintiff is not authorized to

9

institute a criminal prosecution against the Defendants for alleged violations of the Code. *Barth v. Town of Waterboro*, No. RE-18-56, WL 3633885 at *4 (Me. Super. May 26, 2020); 15 M.R.S. §§ 701, 702, 708. Accordingly, the court concludes that counts 3, 5, 7, 9, 11, 13, 14, 15, 17, 23, 24 all fail to state a claim[4] upon which relief may be granted and therefore dismisses all those counts to the extent they are raised against the State of Maine, D.A. Lynch, and A.D.A. Burlock.

## B. Attorney Malpractice (Count 8)

Plaintiff alleges in count 8 of his complaint that D.A. Lynch and A.D.A. Burlock are liable to him for attorney malpractice. The Defendants move to dismiss this claim on the grounds that it is has been brought outside the two-year statute of limitations provided by the Maine Tort Claims Act (MTCA). The Act applies to all tort claims brought against a governmental entity or the employee of a governmental entity. 14 M.R.S. § 8110. Section 8110 provides that:

> Every claim against a governmental entity or its employees permitted under this chapter is forever barred from the courts of this State, unless an action therein is begun within 2 years after the cause of action accrues, except that, if the claimant is a minor when the cause of action accrues, the action may be brought within 2 years of the minor's attaining 18 years of age.

14. M.R.S. § 8110. All of the relevant events described in Plaintiff's complaint occurred in either 2016 or 2017. Plaintiff commenced this lawsuit by filing a complaint on April 23, 2020. Plaintiff's complaint does not establish that he is a

---

[4] Because the Maine Criminal Code does not provide individuals with a private enforcement action, the court has no need to discuss Defendants' alternative argument that the State of Maine and its officials are protected from suit by sovereign immunity.

minor. Plaintiff's complaint is therefore not timely and subject to dismissal on this ground alone.

Additionally and alternatively, Plaintiff's claims against D.A. Lynch and A.D.A. Burlock are also legally deficient because the facts in the complaint are insufficient to establish that either A.D.A. Lynch or A.D.A. Burlock owed Plaintiff a duty of care as his attorney. *See Estate of Cabatit v. Canders*, 2014 ME 133, ¶ 21, 105 A.3d 439 ("the general rule is that an attorney owes a duty of care to only his or her client").[5]

For the above reasons, the court concludes that Plaintiff has failed to state a claim for attorney malpractice against D.A. Lynch or A.D.A. Burlock upon which relief may be granted. Count 8 of Plaintiff's complaint is dismissed pursuant to M.R. Civ. P. 12(b)(6).

## C. Illegal Disclosure of Personal Health Care Information (Count 12)

In count 12 of the complaint, Plaintiff alleges that the Defendants have illegally disclosed his personal healthcare information and therefore are liable to Plaintiff for damages under 22 M.R.S. § 1711-C. Defendants argue that Plaintiff's claim must be dismissed because it has been brought outside the two-year statute of limitations provided by § 1711-C and also because actions brought under 22 M.R.S. § 1711-C may only be brought against individuals who disclose protected health information.

---

[5] The Law Court's opinion in *Canders* goes on to state that "in limited and rare situations, when an attorney's actions are intended to benefit a third party and where policy considerations support it, we may recognize a duty of care by that attorney to a limited class of nonclients." *Canders*, 2014 ME 133, ¶ 21, 105 A.3d 439. This exception does not apply in this case.

11

Plaintiff's cause of action could only be based upon subsection 1711-C(13)(B) of the statute. The subsection provides that:

An individual who is aggrieved by conduct in violation of this section may bring a civil action against a person who has intentionally unlawfully disclosed health care information in the Superior Court in the county in which the individual resides or the disclosure occurred.

22 M.R.S. § 1711-C(13)(B). Subsection 1711-C(13) also provides that such private enforcement actions must be brought "within 2 years of the date a disclosure of this section was or should reasonably have been discovered."

Based on the statements in Plaintiff's complaint, Plaintiff came to the conclusion that his health care information was being illegally disclosed during his counseling sessions at Dirigo Counseling in April 2017 or soon thereafter. Plaintiff's complaint was filed on April 23, 2020 and therefore his complaint is not timely under the statute and subject to dismissal on this ground alone.

Additionally and alternatively, the court also concludes that Plaintiff's complaint contains no allegation that the Defendants disclosed his personal healthcare information to other individuals; instead, the complaint alleges only that Defendants received this information. Therefore, the complaint fails to allege sufficient facts to support a cause of action brought under 22 M.R.S. § 1711-C(13)(B).

Accordingly, Plaintiff's claims against the Defendants in count 12 are dismissed.[6]

---

[6] Because Plaintiff's claims in count 12 are barred by the statute of limitations found in § 1711-C(13) and because the complaint fails to allege sufficient facts to establish all of the elements of his claims, the court has no need to discuss Defendants' alternative argument that the State of Maine and its officials are protected from suit by sovereign or other immunity. However, if the Court reached the

## D. Maine Civil Rights Act (Counts 4 and 6)

In count 4 of the complaint, Plaintiff alleges that Defendants have violated his right to substantive due process as provided by the Fifth and Fourteenth Amendments of the United States Constitution and therefore are liable to him for damages under § 4682 of the Maine Civil Rights Act (MCRA).[7] Count 6 alleges that Defendants intentionally deprived him of his rights under the Maine Constitution and seeks relief under the same statute. However, Plaintiff has not alleged sufficient facts to satisfy the elements of his cause of action.

Section 4682 of the MCRA provides the following:

> Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere **by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of physical force or violence against a person, damage or destruction of property or trespass on property** with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State or violates section 4684-B, the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief.

---

question of immunity, it would find that immunity applies. *Hinckley v. Penobscot Valley Hosp.*, 202 ME 70, ¶ 10.

[7] Plaintiff also identifies Article 1, § 19 of the Maine Constitution as the basis for counts 4 and 6. Section 19 is known as the open courts provision; it states that "[e]very person, for an injury inflicted . . . shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Me. Const. art. I, § 19. The provision requires the courts "to be accessible to all persons alike without discrimination . . . *for every wrong recognized by law as remediable in a court." Martin v. Dep't of Corr.*, 2018 ME 103, ¶ 15, 190 A.2d 237 (emphasis added). Counts 4 and 6 of the complaint do not relate to access to the courts and therefore § 19 is not an appropriate basis upon which Plaintiff can base his causes of action in these counts.

13

5 M.R.S. § 4682 (emphasis added). To state a claim for relief under § 4682, Plaintiff must allege that Defendants intentionally interfered with his constitutional rights by physical force or violence, damage or destruction of his property, trespass on that property, or threats thereof. *See* 5 M.R.S. § 4682; *Andrews v. Dep't of Envt. Prot.*, 1998 ME 198, ¶ 23, 716 A.2d 212. The cause of action provided in § 4682 expands upon the cause of action provided by the similar federal statute, 42 U.S.C. § 1985(3), "but does not include all possible violations of civil rights." *Connolly v. Henrietta D. Goodall Hosp., Inc.*, No. CV-04-0328, 2006 Me. Super. LEXIS 3, at *7 (Jan. 6, 2006); *Andrews*, 1998 ME 198, ¶ 23, 716 A.2d 212.

The allegations in Plaintiff's complaint are not sufficient to support a claim for relief under § 4682.[8] The complaint contains no allegations that Defendants have intentionally used physical force or violence against him, damaged or destroyed his property, trespassed on his property, or threatened any of these actions against him to interfere with his constitutional rights. Accordingly, counts 4 and 6 of the complaint are dismissed pursuant to M.R. Civ. P. 12(b)(6).

## E. Health Insurance Portability and Accountability Act (Counts 10)

---

[8] Because Plaintiff's allegations are insufficient to meet the required elements of his claims, the court has no need to discuss Defendants' alternative argument that the State of Maine and its officials are protected from suit by sovereign or other immunity. However, if the Court reached the immunity question, it would find that immunity applies. *Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994) Further, the Court would find that that the State, D.A. Lynch, and A.D.A. Burlock are not "persons" under the statute and therefore no cause of action is set forth against them. *Doe v. Williams*, 2013 ME 24, ¶ 74, 61 A.3d 718.

14

Count 10 of the complaint alleges that Defendants are liable to Plaintiff for violating § 1302d-6 of the federal Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1302d-6. This claim is fatally flawed, as no private cause of action exists[9] to enforce the protections provided by the HIPAA. *Bonney v. Stephens Mem'l Hosp.*, 2011 ME 46, ¶ 19, 17 A.3d 123. Section 1320d-6 of the HIPAA provides the Secretary of Health and Human Services the authority to enforce HIPAA protections, but does not provide a private right of enforcement, nor do other sections of the HIPAA. *Id.* ¶¶ 17-20. Accordingly, Plaintiff has no means of asserting a claim in this court for any breach of HIPAA's protections. *See Bonney*, 2011 ME 46, ¶¶ 17-20, 17 A.3d 123. Plaintiff's claim against Defendants in count 10 of the complaint is dismissed pursuant to M.R. Civ. P. 12(b)(6).[10]

### F. 42 U.S.C. § 1985 (Count 1)

Count 1 of the complaint alleges that Defendants have conspired with Dirigo Counseling and its employees to deprive him of his substantive due process rights and therefore are liable to him under 42 U.S.C. § 1985. Defendants argue that this claim must be dismissed because Plaintiff has failed to allege that Defendants' alleged actions were motivated by racial or other class-based animus.

In response to the Defendants' motion to dismiss, Plaintiff filed a motion to amend seeking leave to amend count 1 of his complaint to make his allegations of

---

[9] Because the HIPAA does not provide Plaintiff with a private cause of action to pursue his claims, the court has no need to discuss Defendants' alternative argument that the State of Maine and its officials are protected from suit by immunity.

[10] Moreover, it is clear Plaintiff signed a Release with respect to Dirigo Counseling LLC records. With or without the actual records, the Release itself suggests that Plaintiff received some counseling through Dirigo Counseling LLC. (Amend. Compl. ¶¶ 80-81.)

"class based invidiously [sic] discriminatory animus" clearer. Plaintiff's motion to amend does not include a proposed amended complaint; instead, the motion directs the court to examine the description of the proposed amendment contained in his opposition brief to the Defendants' motion to dismiss. Plaintiff's opposition brief states that Plaintiff wishes to amend his complaint to provide details regarding how he is a victim of torture by the United States government and proposes that his status as an alleged torture victim be used to establish the class membership element of his § 1985 claim. However, even if Plaintiff were allowed to make this amendment to his complaint, count 1 of Plaintiff's complaint would still be legally insufficient to state a claim under § 1985.

42 U.S.C. § 1985 provides a cause of action against persons who conspire to interfere with civil rights. The only section of 42 U.S.C. § 1985 that could support Plaintiff's claims in count 1 is subsection (3), which states the following:

> (3) Depriving persons of rights or privileges. If two or more persons in any State or Territory conspire . . . for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

In order to bring an action under § 1985(3), Plaintiff must allege facts sufficient to establish the following elements: "First, plaintiff must allege a conspiracy; second, [he] must allege a conspiratorial purpose to deprive the plaintiff of the equal

16

protection of the laws; third, [he] must identify an overt act in furtherance of the conspiracy; and finally, [he] must show either injury to person or property, or a deprivation of a constitutionally protected right." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019).

"A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right. The right must be 'aimed at,' . . .; its impairment must be a conscious objective of the enterprise." *Bray v. Alexandria Clinic,* 506 U.S. 263, 274-275 (1993). The "'intent to deprive of a right' requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, or more than merely accept it; he must act at least in part for the very purpose of producing it." *Bray,* 506 U.S. at 276. The Law Court has further clarified that "a plaintiff must allege that the intended deprivation of equal protection is motivated by some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' actions." *Rogers v. Sylvester*, 570 A.2d 311, 314 (Me. 1990). Accordingly, to state a claim under the statute, Plaintiff is required to allege facts that if proven would establish a conspiracy among the defendants aimed at achieving the goal of depriving the plaintiff of his civil rights, which was motivated by discriminatory animus toward Plaintiff because of his membership in a cognizable class. *Parker*, 935 F.3d at 18; *Bray,* 506 U.S. at 274-275; *Rogers*, 570 A.2d at 314.

Here, even if Plaintiff's alleged membership in a class consisting of "people tortured by the United States Government" is a cognizable class under § 1985[11], Plaintiff has alleged no facts from which the court can infer that Defendants' alleged actions against him were motivated by animus toward him because of his membership in this class of persons. Section 1985(3) provides a cause of action where a conspiracy is aimed against a person due to his/her membership in a cognizable class; it does not provide a cause of action where the conspiracy is directed toward an individual personally. *See Parker*, 935 F.3d at; *Griffin*, 403 U.S. at 102. Accordingly, the court concludes that Plaintiff's complaint fails to allege sufficient facts to support his cause of action against Defendants under § 1985(3) and further concludes that this flaw would not be rectified by the amendment Plaintiff has proposed.[12]

Plaintiff's motion to amend is denied, as his proposed amendment would be futile.[13] Plaintiff's claims against Defendants in count 1 of his complaint are dismissed pursuant to M.R. Civ. P. 12(b)(6).

### G. 42 U.S.C. § 1983 (Count 2)

Count 2 of the complaint alleges that Defendants have deprived him of his "Fifth Amendment [r]ights to substantive due process" under the United States'

---

[11] The Court has not heard of a cognizable "class" composed of people who have been "tortured by the United States Government", and Plaintiff has not provided any authority for this proposition.

[12] Because Plaintiff's allegations are insufficient to meet the required elements of his claims, the court has no need to discuss Defendants' alternative argument that the State of Maine and its officials are protected from suit by sovereign or other immunity.

[13] A motion to amend a complaint may be denied based upon the futility of the proposed amendment, bad faith, undue delay, or undue prejudice. *Montgomery v. Eaton Peabody, LLP,* 2016 ME 44, ¶ 13, 135 A.3d 106. A motion to amend a complaint is futile when the complaint as amended would be subject to dismissal under Rule 12. *See id.* ("w]hen a proposed amended complaint would be subject to a motion to dismiss, the court is well within its discretion in denying leave to amend.")

18

Constitution and are therefore liable to him under 42 U.S.C. § 1983. Defendants argue that Plaintiff's claim must be dismissed under Rule 12(b)(6) for the following reasons: 1) the statute does not provide a remedy for claims made against a State or claims made against state officials; 2) D.A. Lynch and A.D.A. Burlock are protected from personal civil liability by absolute immunity because they were performing prosecutorial functions; 3) D.A. Lynch and A.D.A. Burlock are protected by qualified immunity; and 4) Plaintiff's complaint does not contain sufficient factual allegations to permit the court to infer that Defendants have violated Plaintiff's substantive due process rights under the Fifth Amendment.

"Section 1983 provides a remedy to individuals who are deprived of rights secured by federal law or the United States Constitution by persons acting under color of state law." *Gray v. State*, 624 A.2d 479, 482 (Me. 1993). The relevant part of the statute provides that:

> [e]very person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983. Accordingly, "to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *Berry v. RSU 13 Sch. Bd.*, No. 2:15-cv-00145-JAW, 2016 U.S. Dist. LEXIS 23903, at *50 (D. Me. Feb. 24, 2016); *West v. Atkins*, 487 U.S. 42, 48 (1988).

The U.S. Supreme Court has held that States and state officials who are sued in their official capacities are not "persons" for purposes of § 1983, and therefore

19

claims against States and state officials may not be brought under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Doe I v. Williams*, 2013 ME 24, ¶ 74, 61 A.3d 718 (holding that court properly dismissed a complaint asserting claims under the MCRA and § 1983 against state officials sued in their official capacities, as "a state, including a state official in his or her official capacity, is not a person within the meaning of § 1983 or the MCRA"). Based on this legal doctrine, it is immediately apparent that Plaintiff's § 1983 claim against the State of Maine and his claims brought against D.A. Lynch and A.D.A. Burlock in their capacity as state officials are not cognizable under the statute.[14] The statute does not provide for a private cause of action against a State government or against state officials. Accordingly, Plaintiff's claims against the State of Maine, and D.A. Lynch and A.D.A. Burlock to the extent they are sued in their official capacities as state officials, are dismissed pursuant to M.R. Civ. P. 12(b)(6). [15]

The remaining issue is whether Plaintiff's complaint is legally sufficient to state a claim under § 1983 against D.A. Lynch and A.D.A. Burlock in their capacities as private individuals. Plaintiff has based his cause of action on his claim that D.A. Lynch and A.D.A. Burlock have violated his substantive due process rights under the Fifth Amendment of the United States' Constitution. The Fifth Amendment's

---

[14] 30-A M.R.S. § 256 (the district attorneys and assistant district attorneys serving Maine's prosecutorial districts are State officials); *Donovan v. Fowle*, No. 9-328-B-W, 2010 U.S. Dist. LEXIS 137075 (D. Me. 2010) (magistrate's recommended decision) *affirmed by* 762 F. Supp. 2d 186, 2011 U.S. Dist. LEXIS 5660 (D. Me. Jan. 4, 2011) (treating district attorneys for Maine's prosecutorial districts as State officials).

[15] Because the State of Maine and its officials are not "persons" within the meaning of § 1983, the court has no need to discuss Defendants' alternative argument that the State of Maine and its officials, D.A. Lynch and A.D.A. Burlock, are protected from suit by sovereign or other immunity.

guarantee of substantive due process protects the individual against government action that is arbitrary and oppressively exercised. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). The criteria used to determine whether governmental action violates the substantive due process guarantee is different depending on whether a legislative action or a specific act of a governmental officer (executive action) is at issue. *Id.* at 846. Plaintiff's claim in this case concerns the specific actions of governmental officers, D.A. Lynch and A.D.A. Burlock, and therefore the criteria for executive action applies.

When executive action is at issue, the substantive due process guarantee is violated only if the governmental officers' actions rise to the level of conduct that "shocks the conscience" in a constitutional sense. *Id.* at 846-847. "The burden to show governmental conduct that 'shocks the conscience' is extremely high, requiring 'stunning' evidence of 'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations resulting from 'bad faith' to 'something more egregious and more extreme.'" *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010); *see also Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) ("[f]or a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.") Additionally, to pursue a substantive due process claim, the plaintiff must show a deprivation of a protected interest in life, liberty, or property. *Rivera v. Rhode Island*, 402 F.3d 27, 33-34 (1st Cir. 2005).

First, D.A. Lynch's dismissal of Plaintiff's criminal case is entitled to absolute immunity under the common law. The U.S. Supreme Court has held that common

21

law, prosecutorial immunity extends to federal civil rights claims brought against state prosecutors under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 418, 428-430 (1976). This common law, prosecutorial immunity is absolute[16], but its scope is limited. It applies only to a prosecutor's actions that are "intimately associated with the judicial phase of the criminal process. *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-343 (2009); *Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993); *Imbler*, 424 U.S. at 430. Under this legal doctrine, D.A. Lynch's dismissal of the State's criminal case against Plaintiff is plainly covered by absolute immunity because it is an activity that is intimately associated with the judicial phase of the criminal process. Plaintiff's claim based on D.A. Lynch's dismissal of that criminal case is dismissed on this basis alone. Moreover, even if D.A. Lynch received information about Plaintiff's attendance at counseling which led to dismissal of the criminal case against him, that would not "shock the conscience" in a constitutional sense, nor did Plaintiff suffer a due process injury by having the criminal case against him dismissed.

Plaintiff's claim that A.D.A. Burlock was stalking him is legally insufficient to support his cause of action. On this topic, Plaintiff has alleged that he observed A.D.A. Burlock (or "someone doing a very convincing impersonation of Stephen

---

[16] The Supreme Court has articulated that prosecutors' absolute immunity for their activities as the State's legal advocate is based upon several concerns, including concerns that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 422-23. The Supreme Court reasoned that in the absence of absolute prosecutorial immunity, a prosecutor's "apprehension' of potential civil suits would "weaken the fearless and impartial policy which should characterize the administration of this office." *Id.* at 423. The Supreme Court further reasoned that allowing such civil suits would divert prosecutors' attention from their important duties as enforcing the criminal law and impose "unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials." *Id.* at 425-426.

22

Burlock") "entering and leaving the apartment directly across from [Plaintiffs] apartment at Eagle Crest Apartments at certain times" in an "extremely conspicuous" manner. (Amend. Compl. ¶ 108; Reply to Mot. Dismiss 6.) Plaintiff also alleges that after his criminal case was dismissed, he saw Burlock again at his apartment complex. (*Id.* ¶ 113.) Upon seeing Burlock, Plaintiff alleges that he shouted "case dismissed" to Burlock and that Burlock responded by "extending his middle finger" at Plaintiff. (*Id.*) Based on this conduct, Plaintiff asserts that he "has a justifiable belief that Stephen Burlock is a member of the [FBI] or was otherwise empowered by the FBI or the State of Maine to be at the Plaintiff's residence on frequent occasion" and that he was being "stalked" by ADA Burlock. (Amend. Compl. ¶ 112.) Importantly, there are no allegations that Burlock did anything other than frequently go to and from an apartment near the Plaintiff's apartment in an obvious manner and once making a hand gesture. Even if Plaintiff's incredible allegations are taken as true, this claim must be dismissed for the following independent reasons: 1) the allegations are insufficient to establish that A.D.A. Burlock caused Plaintiff to suffer a deprivation in life, liberty, or property; 2) the allegations that "Stephen Burlock is a member of the [FBI] or was otherwise empowered by the FBI or the State of Maine to be at the Plaintiff's residence on frequent occasion" are based on nothing more than pure speculation; and 3) the conduct as alleged falls so sort of the level of egregious, arbitrary conduct that is required to establish a substantive due process claim that the claim must be dismissed as it could not reasonably support a verdict for the plaintiff. *Collins v. Harker Heights*, 503 U.S. 115 (1992) (held that plaintiff's Fourteenth Amendment substantive due process complaint was properly dismissed

23

as it did not allege conduct that could "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense"); *Valez v. Levy*, 401 F.3d 75 (2d Cir. 2005) (for a substantive due process claim to survive a Rule 12(b)(6) motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience").[17]

Plaintiff's other claims are also insufficient to support a cause of action under § 1983. His claim that D.A. Lynch and A.D.A. Burlock were part of some conspiracy to manipulate Plaintiff into seeking counseling services from Dirigo Counseling, a business Plaintiff believes is a government front, and to then spy on Plaintiff's counseling sessions and illicitly obtain a psychiatric evaluation of Plaintiff are based on Plaintiff's own conclusions and suspicions rather than on specific factual allegations. Conclusory allegations and suspicions are not sufficient to state a cause of action. *See generally, Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 23, 192 A.3d 589; *Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, 61 A.3d 1249 (a complaint must "allege facts with sufficient particularity so that if true, the facts would satisfy the elements of a cause of action").[19]

---

[17] *See also. Doe v. Miami Univ.*, 882 F.3d 579, 599 (6th Cir. 2018) ("[e]ven viewing [the plaintiff's] complaint in the most favorable light, the defendants' alleged actions do not constitute constitutionally arbitrary or conscience-shocking conduct."); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 643 (6th Cir. 2005) (a student's allegations regarding his expulsion did not shock the conscience and thus, the student's complaint failed to state a cognizable substantive due process claim); *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1160 (D. Colo. 2001) (alleged omissions by the defendants "fail to shock the conscience of this court in a Fourteenth Amendment substantive due process constitutional sense"); *see also Lyman v. Huber*, 2010 ME 139, ¶ 16, 10 A.3d 707 (the Law Court has endorsed the trial court acting as a gatekeeper—meaning, the court may "evaluate an IIED claim to determine whether the facts alleged could reasonably justify a verdict for the plaintiff.")

[19] Because Plaintiff's complaint fails to allege sufficient facts to support each element of his cause of action against D.A. Lynch and A.D.A. Burlock, the court has no need to address the defendants'

For the above reasons, all of Plaintiff's claims under 42 U.S.C. § 1983 are dismissed.

## CONCLUSION

Plaintiff's complaint fails to state any claim against the State of Maine, D.A. Lynch, or A.D.A. Burlock upon which relief may be granted. The dismissal is with prejudice. *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 9, 708 A.2d 283; *see also* M.R. Civ. P. 41(b) (involuntary dismissal "other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits").

Entry:

1. Plaintiff's Motion to Amend is DENIED, as the proposed amendment would be futile.

2. The State of Maine, District Attorney of Prosecutorial District 5 Marianne Lynch (including the Penobscot County District Attorney's Office), and Assistant District Attorney Stephen Burlock's Motion to Dismiss is GRANTED.

The Clerk shall incorporate this order on the docket by reference pursuant to M.R. Civ. P. 79(a).

1|20|2021

Date

Ann Murray, Justice
Maine Superior Court

---

additional arguments that D.A. Lynch and A.D.A. Burlock's alleged activities in conspiring to spy upon and illicitly obtain a psychiatric evaluation of Plaintiff are protected by prosecutorial immunity or qualified immunity. Nor does the court reach the issue of whether ADA Burlock would be protected by prosecutorial or other immunity for his alleged stalking of Plaintiff.

STATE OF MAINE
Penobscot, ss

Glen Plourde,

Plaintiff,

v.

Dirigo Counseling Clinic LLC,

Megann Holland,

Alan Algee,

Marianne Lynch,

Stephen Burlock,

State of Maine,

Penobscot County District Attorney's Office,

Defendants.

SUPERIOR COURT
Civil Action
Docket No. CV-20-0055

**ORDER GRANTING MEGANN HOLLAND, ALAN ALGEE, and DIRIGO COUNSELING CLINIC LLC'S MOTION TO DISMISS**

Before the court are three motions related to defendants Dirigo Counseling Clinic LLC, Alan Algee, and Megann Holland (hereinafter referred to collectively as "Defendants" or "the Defendants").[1] First, there is a motion to dismiss plaintiff Glen Plourde's complaint against them pursuant to M.R. Civ. P. 12(b)(6). The second is Plaintiff's motion for entry of default and default judgment against the Defendants. The third is Plaintiff's motion for an extension of time to serve Defendant Megann Holland. For the reasons set forth below, the court grants the Defendants'

---

[1] There are other defendants in this case as well. To the extent the State of Maine, D.A. Lynch, and A.D.A. Burlock are referenced in this Order, they will be specifically named. Their Motion to Dismiss is the subject of a separate Order.

1

motion to dismiss and denies Plaintiff's motion for entry of default and default judgment. Plaintiff's motion for extension of time is moot.

## BACKGROUND

Plaintiff commenced this case by filing a complaint[2] in the Superior Court on April 23, 2020. Before serving the Defendants, Plaintiff filed an amended complaint on July 1, 2020. The following background summarizes the allegations made in Plaintiff's amended complaint (hereinafter referred to as the "complaint").

Plaintiff was charged with domestic violence assault in the case docketed PENCD-CR-16-20309. Plaintiff alleges that, pursuant to a plea agreement with the Penobscot County District Attorney, he agreed to seek family counseling services. (Amend. Compl. ¶¶ 9-16.) He alleges that Dirigo Counseling Clinic, LLC was the only business providing counseling services in the Bangor area to answer its phone and accept him as a patient and therefore the only provider from which he could seek counseling services. (*Id.* ¶¶ 10-15.) Dirigo Counseling scheduled a counseling session for Plaintiff with Dirigo's family counselor, Megann Holland, for April 10, 2017. (*Id.* ¶ 21-22.) During the counseling session, Plaintiff became concerned that Ms. Holland was not a fully licensed and qualified family counselor because Ms. Holland asked questions that he felt were improper for a family counseling session and also because, based on his reading of Ms. Holland's resume, Ms. Holland did not have a psychology degree or the necessary professional experience. (*Id.* ¶¶ 23-35.) Plaintiff also alleges that Ms. Holland was dressed "provocatively"

---

[2] Plaintiff filed a very similar complaint in the federal district court for the District of Maine in April 2020, *Plourde v. Maine*, No. 1:20-CV-00137-LEW, 2020 WL 2600969 (D. Me. May 21, 2020). Citing the implausibility of Plaintiff's allegations, the federal district court concluded that the "allegations [in the complaint] cannot reasonably be construed to assert a substantial federal claim" and dismissed the complaint *sua sponte* due to lack of subject matter jurisdiction. *Id.* at *4-5. The district court also warned Plaintiff that "filing restrictions may follow if he pursues further baseless or frivolous litigation." *Id.* at *5.

and "unprofessionally" for their session, which caused him to have further suspicions that Ms. Holland was not qualified to act as his family counselor. (*Id.* ¶ 23.)

Plaintiff met again with Ms. Holland for a counseling session on April 17, 2017. During this session, Ms. Holland allegedly asked Plaintiff numerous times if he would like to play with a piece of brown clay that was on her desk, an activity that Ms. Holland said her patients found relaxing. (*Id.* ¶¶ 38-47.) Plaintiff states that the brown clay looked like feces. (*Id.*) Plaintiff alleges that he repeatedly refused Ms. Holland's suggestion that he play with the clay, but Ms. Holland persisted in asking him to do so. (*Id.*) Plaintiff asserts that Ms. Holland's repeated inquiries about whether he would like to play with the clay were suspicious and caused him to believe that the clay was not just clay. (*Id.*) Based on this alleged incident, Plaintiff asserts that Ms. Holland subjected him to harassment, abuse, and medical malpractice. (*Id.* ¶¶ 48-49.)

Plaintiff states that he then questioned Ms. Holland about her psychology credentials and she allegedly admitted that she was "working towards her associates degree" and was not a licensed practitioner. (*Id.* ¶ 51.) Plaintiff alleges that he then asked Ms. Holland if she was collaborating with other people regarding Plaintiff's counseling sessions and that Holland responded by saying that she was discussing Plaintiff's sessions with a panel of associates. (*Id.* ¶ 52.) Plaintiff then became suspicious that Ms. Holland was discussing his case with the government or the Penobscot County District Attorney's Office. (*Id.* ¶ 53.) In response to Plaintiff's questions on the topic, Ms. Holland allegedly stated that "there might be some government employees I discuss your case with." (*Id.* ¶ 53.) Plaintiff further states that he could hear noise from outside the room during their counseling sessions. (*Id.* ¶¶ 54-55.) Based upon that noise, he concludes that his counseling sessions with Ms. Holland were being "eavesdropped on" and Ms. Holland was allowing this eavesdropping to occur. (*Id.*)

3

Plaintiff additionally states that during this second counseling session, Ms. Holland said that "it was her job to produce a psychiatric diagnosis" of Plaintiff. (*Id.* ¶ 57.) Plaintiff states that this made him concerned and suspicious because he had not asked for a psychiatric diagnosis and also because the Penobscot County District Attorneys who were prosecuting his criminal case "wanted and were angling for" a psychiatric diagnosis of Plaintiff. (*Id.* ¶¶ 58-59.) Plaintiff states that the District Attorneys had moved for such a psychiatric examination in his criminal case. (*Id.* ¶ 59.) Plaintiff further alleges that he was suspicious and concerned about Holland's statement because Dirigo Counseling "is also known to work with and for" the State of Maine. (*Id.*) Based on the above allegations, Plaintiff claims that Dirigo Counseling Clinic and Megann Holland were colluding and cooperating with the State of Maine, the Penobscot County District Attorney's Office, D.A. Lynch and A.D.A. Burlock to obtain an unauthorized psychiatric evaluation of Plaintiff. (*Id.* ¶¶ 60-64.)

After Ms. Holland allegedly stated that it was her job to produce a psychiatric diagnosis of him, Plaintiff alleges that he informed Ms. Holland that he refused to allow her to make any sort of diagnosis of him and that this was not the reason he came to Dirigo for counseling. (*Id.* ¶¶ 65-66.) Plaintiff states that Ms. Holland then suggested that they cease meeting for counseling sessions; however, Plaintiff refused because of fear that stopping the counseling sessions might harm his plea agreement. (*Id.* ¶ 67.) During this conversation, Plaintiff alleges that he heard a woman's voice come from a "grey speaker" on Ms. Holland's desk which said "alright that's enough" and that Holland responded, "ok" to this voice. (*Id.* ¶¶ 69-70.)

Upon hearing this exchange, Plaintiff began questioning Ms. Holland about the voice from the speaker. (*Id.* ¶¶ 71-73.) Plaintiff alleges that Ms. Holland responded by telling Plaintiff that the speaker was connected to her phone and that Plaintiff had heard a message going to her

4

voicemail. (*Id.* ¶ 72.) When Plaintiff continued questioning her about the speaker, Ms. Holland allegedly got up from her chair "walked aggressively" toward the speaker, picked it up, "walked aggressively" in front of Plaintiff, and "quickly" and "aggressively" "thrust" the speaker "within approximately 3-inches" of Plaintiff's face and stated "[s]ee its just a Bose speaker connected to my cellphone's voicemail!" (*Id.* ¶¶ 73-75.) Plaintiff claims that the speaker was "dangerous" and "potentially harmful" and that Ms. Holland's actions constitute "[a]ssault"], "[r]eckless [e]ndangerment", and "[m]edical [m]alpractice". (*Id.* ¶¶ 76-78.)

When Plaintiff went for his next counseling session on April 24, 2017, he arrived at the clinic but found the clinic closed and that his counseling session had been canceled. (*Id.* ¶¶ 82-84.) Plaintiff states that when he called Dirigo Counseling's Executive Director, Alan Algee, that day to inquire about his appointment, Mr. Algee informed him that his counseling session had been cancelled by Ms. Holland and that Ms. Holland had sent a letter to him informing him of the cancellation. (*Id.* ¶ 86.) Plaintiff then learned from Mr. Algee that Dirigo Counseling had sent the letter to the wrong address. (*Id.* ¶¶ 87-89) (apparently leaving off the apartment number). Plaintiff asserts that Ms. Holland intentionally misaddressed the letter to Plaintiff. (*Id.* ¶ 90.) Due to the cancellation of the appointment and his nonreceipt of the letter, Plaintiff claims that he has suffered "unnecessary fear, anxiety, and mental anguish" as these events caused Plaintiff to believe that Penobscot County District Attorney Lynch would use this cancellation as a reason to nullify his plea agreement and resume prosecuting Plaintiff. (*Id.* ¶ 90.) Later that day Plaintiff received an email from Holland informing him that she was terminating their clinical relationship. (*Id.* ¶¶ 92-93.)

Plaintiff further states that the copies of his medical records that he received from Dirigo Counseling contain many inaccuracies and falsehoods regarding his counseling sessions. (*Id.* ¶¶

5

94-96.) In particular, Plaintiff asserts that Ms. Holland described Plaintiff's behavior as "anxious, defensive, paranoid, resistant, and angry" during their counseling sessions; however, Plaintiff states that his behavior was actually "calm and collected" during the sessions. (*Id.* ¶ 95.) Plaintiff further alleges that Ms. Holland's notes misrepresented Plaintiff's reaction to the grey speaker on her desk. (*Id.* ¶ 96.) Based on these alleged facts, Plaintiff concludes that his medical records were falsified in order to cast him in a negative light and obscure Holland's medical malpractice. (*Id.* ¶ 98.)

Plaintiff's complaint continues and makes additional allegations directed against District Attorney (D.A.) Lynch and Assistant District Attorney (A.D.A.) Burlock. Plaintiff states that in the criminal case against him, PENCD-CR-16-20309, D.A. Lynch was representing the State and filed a motion to compel a forensic examination of Plaintiff. (*Id.* ¶ 100.) The complaint states that he appeared for a court hearing in this case and was told by a court clerk that D.A. Lynch wanted to speak with him in her office. (*Id.* ¶ 102.) Because of Plaintiff's concerns about meeting in her office, D.A. Lynch met with Plaintiff in the lobby and told him that his case was dismissed. (*Id.* ¶¶ 103-104.) He states that this dismissal prevented him from having an opportunity to argue his motions in that case before the court and states that if he had been allowed to argue his motions it "would have been highly beneficial" to him and "highly detrimental" to D.A. Lynch and other defendants. (*Id.* ¶ 105.) Additionally, Plaintiff states that he was never given an opportunity to review medical information that D.A. Lynch allegedly received from Dirigo Counseling. (*Id.* ¶ 106.) He then states that D.A. Lynch stated in her dismissal of his criminal case that "Defendant complied with agreement to seek mental health treatment"; Plaintiff is suspicious of this and alleges that "Lynch should have had no way of knowing that". (*Id.* ¶ 107.)

Plaintiff further alleges that A.D.A. Burlock is a Federal Bureau of Investigation (FBI) agent and has been spying on Plaintiff. (*Id.* ¶ 108-115.) The complaint states that Plaintiff has regularly observed A.D.A. Burlock "extremely conspicuously" entering and leaving the apartment directly across from his apartment. (*Id.* ¶ 108.) Based on his allegation, Plaintiff claims that A.D.A. Burlock has been stalking him on a near daily basis. (*Id.* ¶¶ 112, 118.) Plaintiff also adds that he believes that the State of Maine was "illegally receiving live updates" of Plaintiff's counseling sessions at Dirigo Counseling. (*Id.* ¶ 118.)

Based on the foregoing and other allegations, Plaintiff's complaint raises a plethora of claims against Dirigo Counseling, Megann Holland, and Allan Algee which are set forth in 20 counts. His causes of action include medical malpractice, statutory actions for violations of his constitutional rights, wrongful disclosure of health care information, and various claims brought under the Maine Criminal Code. Defendants' filed a motion to dismiss the complaint on August 3, 2020 on the grounds that Plaintiff has failed to state any claim upon which relief may be granted.

**STANDARD OF REVIEW**

A motion to dismiss "tests the legal sufficiency of the complaint." *Carey v. Bd. of Overseers of the Bar,* 2018 ME 119, ¶ 19, 192 A.3d 589. In evaluating a motion to dismiss brought under Rule 12(b)(6), the court does not adjudicate the facts; instead, the court treats the factual allegations in the complaint as true and evaluates these allegations in the light most favorable to the plaintiff to determine if the complaint sets forth the "elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Argereow v. Weisberg,* 2018 ME 140, ¶ 12, 195 A.3d 1210; *Marshall v. Town of Dexter,* 2015 ME 135, ¶ 2, 125 A.3d 1141. The complaint does not need to "identify the particular legal theories that will be relied upon, but it must describe the essence of the claim and allege facts sufficient to demonstrate that the

7

complaining party has been injured in a way that entitles him or her to relief." *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823. Thus, a plaintiff may not proceed to litigate a cause of action if the plaintiff's complaint "has failed to allege facts with sufficient particularity so that if true, the facts would satisfy the elements of a cause of action." *America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, 61 A.3d 1249; *Burns*, 2011 ME 61, ¶ 17, 19 A.3d 823. Merely reciting the legal elements of a claim is insufficient. *Sunspray Condo.*, 2013 ME 19, ¶ 13, 61 A.3d 1249.

Allegations in a complaint must be set forth in a "simple, concise, and direct" manner. M.R. Civ. P. 8. In examining the complaint, the court is not bound to accept the complaint's legal conclusions as true. *Seacoast Hangar Condo. II Assoc. v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166; *Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 23, 192 A.3d 589 (holding that a plaintiffs complaint was legally deficient where his complaint offered only conclusory allegations without particular facts to support each element of his cause of action). A dismissal will not be granted unless "it appears beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Argereow*, 2018 ME 140, ¶ 12, 195 A.3d 1210; *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993) (the court's inquiry on a motion to dismiss for failure to state a claim "tests the legal sufficiency of the allegations in a complaint, not the sufficiency of the evidence the plaintiffs are able to present.")

**DEFENDANT'S MOTION TO DISMISS**

### A. Maine Criminal Code (Counts 3, 5, 11, 13, 14, 15, 17, 19, 20-24)

In counts 3, 5, 11, 13, 14, 15, 17, 19, 20-24 of the complaint, Plaintiff alleges that Defendants are liable to Plaintiff for violating various sections of the Maine Criminal Code, Title 17-A. Defendants argue that all of these claims must be dismissed because the Maine Criminal

8

Code does not provide a private cause of action for violations of the Code. Defendants are correct—"there is no private, civil remedy for alleged violations of the Maine Criminal Code," and Plaintiff is not authorized to institute a criminal prosecution against the Defendants for alleged violations of the Code. *Barth v. Town of Waterboro*, No. RE-18-56, WL 3633885 at *4 (May 26, 2020); 15 M.R.S. §§ 701, 708. Accordingly, the court concludes that counts 3, 5, 11, 13, 14, 15, 17, 19, and 20-24 all fail to state a claim upon which relief may be granted and dismisses all of these counts against the Defendants pursuant to M.R. Civ. P. 12(b)(6).

**B. Maine Health Security Act (Counts 3, 4, 5, 6, 11, 12, 15, 16, 17, and 18)**

Defendants argue that the Maine Health Security Act (MHSA), 24 M.R.S. §§2801-2985, applies to counts 3, 4, 5, 6, 11, 12, 15, 16, 17, and 18 of the complaint and thus these claims are subject to the three year statute of limitations and the specific procedural rules provided by the Act for such claims. Defendants argue that because Plaintiff has not brought his claims within the three-year statute of limitations and has not complied with the prelitigation screening process mandated by the Act, his claims in the above counts must be dismissed.

The Maine Health Security Act applies to all "action[s] for professional negligence" brought against a "health care provider," "health care practitioner," or the "agents or employees" thereof. 24 M.R.S. § 2502(6); *Saunders v. Tisher*, 2006 ME 94, ¶ 12, 902 A.2d 830. The term "action for professional negligence" has been given a very broad definition by the Legislature and has been given a correspondingly broad interpretation by the Maine Supreme Court. The term encompasses "any action for damages for injury or death . . . whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S. § 2502(6). The Law Court has clarified that to fall within the definition, "the claim need

9

not be one of negligence" and the "procedural requirements and limitations of the MHSA are applicable in a wide variety of contexts." *Saunders*, 2006 ME 94, ¶ 13, 902 A.2d 830.

If a claim is covered by the MHSA, the plaintiff may only commence his or her action in Superior Court if the plaintiff has first served on the opposing parties a written notice of claim that complies with 24 M.R.S. § 2903, filed the notice of claim in the court, and presented his or her claims in a mandatory prelitigation screening process, unless both parties agree to opt out of prelitigation screening. *D.S. v. Spurwink Servs.*, 2013 ME 31, ¶¶ 18-19, 65 A.3d 1196; 24 M.R.S. §§ 2853, 2854, 2903(1). If the plaintiff files an action for professional negligence without complying with these requirements, the court must dismiss the action due to lack of subject matter jurisdiction. *Hill v. Kwan*, 2009 ME 4, ¶ 8, 962 A.2d 963. The MHSA also contains a statute of limitations, which is set forth in § 2902 of the Act, and requires that "actions for professional negligence" be brought "within 3 years after the cause of action accrues." 24 M.R.S. § 2902. A cause of action accrues for purposes of § 2902, "on the date of the act or omission giving rise to the injury." *Id.*

It is clear from the face of Plaintiff's complaint that defendant Dirigo Counseling is a health care provider and that defendants Megann Holland and Alan Algee are healthcare practitioners and employees of Dirigo Counseling. *See e.g.* (Amend. Compl. ¶¶ 3, 6-7, 14-22.) To determine whether plaintiff's claims must be dismissed due to noncompliance with the MHSA, the first question for the court is whether Plaintiff's claims, as stated in his amended complaint, fall within the MHSA's definition of an "action for professional negligence."

Count 15 (conspiracy to commit medical malpractice), count 16 (medical malpractice), count 17 (conspiracy to commit intentionally fraudulent medical malpractice), and count 18 (intentionally fraudulent medical malpractice) fall squarely within the broad scope of the term's

definition, as the claims directly allege medical malpractice or conspiracy to commit the same. *See* 24 M.R.S. § 2502(6). Count 11 (conspiracy to illegally disclose personal health care information) and count 12 (illegal disclosure of personal health care information) also fall within the definition as they relate to the provision of health care services. *See Brand v. Seider*, 1997 ME 176, ¶¶ 4-5, 697 A.2d 846 (claim for "breach of confidence" and "disclosure of information gained within the context of the patient therapist relationship" held to be a claim governed by the MHSA).

Plaintiff's claims that Defendants violated his civil rights and conspired to violate his civil rights (counts 3-6) are also within the MHSA's broad definition of professional negligence. All of the activities that Dirigo Counseling and its employees allegedly engaged in occurred during Plaintiff's counseling sessions or implicate the Defendants in their capacity as Plaintiff's mental health provider. The gravamen of Plaintiff's allegations against Dirigo Counseling and its employees is that they abused their position as his mental health provider, illegally disclosed personal information, and provided incompetent or fraudulent medical services. The fact that Plaintiff has also styled his claims against the Defendants as civil rights claims does not allow him to avoid the broad application of the MHSA's requirements for claims brought against health care providers. *Saunders*, 2006 ME 94, ¶ 9, 902 A.2d 830.

For all of the above reasons, the court concludes that allegations within counts 3, 4, 5, 6, 11, 12, 15, 16, 17, and 18 of the complaint fall within the definition of an "action for professional negligence" as provided by § 2502(6) of the MHSA. Upon reviewing the record, it is clear that plaintiff has not complied with the requirement that he present these claims to a prelitigation screening panel before pursuing them in Superior Court and also clear that Defendants have not waived the prelitigation screening requirement. Moreover, the three-year deadline to present these claims to the prelitigation screening panel has passed. Accordingly, the court dismisses counts 3,

11

4, 5, 6, 11, 12, 15, 16, 17, and 18 of the complaint due to Plaintiff's noncompliance with the MHSA's prelitigation screening process. *Kwan*, 2009 ME 4, ¶¶ 7-8, 962 A.2d 963; 24 M.R.S. §§ 2851, 2853, 2903. The grounds for dismissal of counts 3, 5, 11, 15, and 17 set forth in this section are independent of and in addition to those set forth in section A of this Order.

## C. Health Insurance Portability and Accountability Act (Counts 9-10)

Count 10 of the complaint alleges that Defendants are liable to Plaintiff for violating § 1302d-6 of the federal Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1302d-6. Count 9 alleges conspiracy to violate the same. Both of these claims are fatally flawed, as no private cause of action exists to enforce the protections provided by the HIPAA. *Bonney v. Stephens Mem'l Hosp.*, 2011 ME 46, ¶ 19, 17 A.3d 123. Section 1320d-6 of the HIPAA provides the Secretary of Health and Human Services with the authority to enforce HIPAA protections, but does not provide a private right of enforcement, nor do other sections of the HIPAA. *Bonney*, 2011 ME 46, ¶¶ 17-20, 17 A.3d 123. Accordingly, Plaintiff has no means of asserting a claim in this court for any breach of HIPAA's protections. *Id.* For this reason, counts 9 and 10 of the complaint are dismissed.

## D. Maine Civil Rights Act (Counts 4 and 6)

In count 4 of the complaint, Plaintiff alleges that Defendants have violated his right to substantive due process as provided by the Fifth and Fourteenth Amendments of the United States Constitution and therefore are liable to him for damages under § 4682 of the Maine Civil Rights Act (MCRA).[3] In count 6, Plaintiff alleges that the Defendants have violated his right to

---

[3] Plaintiff also identifies Article 1, § 19 of the Maine Constitution as the basis for counts 4 and 6. Section 19 is known as the open courts provision; it states that "[e]very person, for an injury inflicted . . . shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Me. Const. art. I, § 19. The provision requires the courts "to be accessible to all persons alike without discrimination . . . *for every wrong recognized by law as remediable in a court.*" Martin v. Dep't of Corr., 2018 ME 103, ¶ 15, 190 A.2d 237 (emphasis added). Counts 4 and 6 of the complaint do not relate to access to the courts and therefore § 19 is not an appropriate basis upon which Plaintiff can base his causes of action in these counts.

12

substantive due process provided by Article 1, § 6 of Maine's Constitution and therefore are liable to him for damages under § 4682. In section B of this Order, the court dismissed these counts because Plaintiff's claims qualify as "actions for professional negligence" within the meaning of the MHSA and Plaintiff failed to comply with the procedural requirements mandated by the MHSA. As explained in the following paragraphs, the court also alternatively dismisses these two counts on the grounds that Plaintiff's complaint does not contain sufficient factual allegations to support his causes of action under § 4682.

Section 4682 of the MCRA provides that:

> Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to **intentionally interfere by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of physical force or violence against a person, damage or destruction of property or trespass on property** with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State or violates section 4684-B, the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief.

5 M.R.S. § 4682 (emphasis added). To state a claim for relief under § 4682, Plaintiff must allege facts which, if accepted as true, would establish that Defendants intentionally interfered with his constitutional rights by physical force or violence, damage or destruction of his property, trespass on that property, or threats thereof. *See* 5 M.R.S. § 4682; *Andrews v. Dep't of Envt. Prot.*, 1998 ME 198, ¶ 23, 716 A.2d 212. The cause of action provided in § 4682 expands upon the cause of action provided by the similar federal statute, 42 U.S.C. § 1985(3), "but does not include all possible violations of civil rights." *Connolly v. Henrietta D. Goodall Hosp., Inc.*, No. CV-04-0328, 2006 Me. Super. LEXIS 3, at *7 (Jan. 6, 2006); *Andrews*, 1998 ME 198, ¶ 23, 716 A.2d 212.

Plaintiff alleges that during a counseling session with defendant Holland, Plaintiff heard a woman speaking to Holland through a grey speaker on Holland's desk and that Holland responded to the woman. Plaintiff alleges that in response to Plaintiff's questioning about the speaker, Holland became "extremely angry" and "walked aggressively" toward the black box, picked it up, and "walked aggressively" in front of Plaintiff and "quickly" and "aggressively thrust" the box within three inches of Plaintiff's face. (Amend. Compl. ¶¶ 71-75.) When Holland allegedly thrust the box in front of Plaintiff's face she allegedly stated "[s]ee, it is just a Bose speaker connected to my cellphone's voicemail!" (*Id.* ¶ 75.) Plaintiff alleges that the grey speaker was "dangerous and potentially harmful" and that Holland's actions were "dangerous", "reckless", and that her conduct was intimidating and a "fear and anxiety-provoking action". (*Id.* ¶¶ 77-78.) Based on this alleged conduct, Plaintiff concludes that he is a victim of "[a]ssault" and "[r]eckless [e]ndangerment." (*Id.* ¶ 77.)

The allegations in Plaintiff's complaint are not sufficient to support a claim for relief under § 4682. Plaintiff has not alleged that Holland hit him or interfered with his property, but instead relies on a theory that he suffered from a threat of physical force or violence to his person to support his claim. Plaintiff asserts that the grey speaker Holland thrust at him was dangerous but does not provide any facts about the box to suggest that the grey speaker was intrinsically dangerous. Nor does Plaintiff allege that Holland stated she was going to strike him or that he believed that Holland would strike him. Plaintiff's assertions that the speaker was dangerous and Holland's conduct was dangerous, reckless, illegal, and constituted assault and reckless endangerment are conclusory and are not accepted by the

14

court for purposes of this motion. *See Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 23, 192 A.3d 589.

The cause of action provided by the Legislature in § 4682 "does not include all possible violations of civil rights." *Connolly*, 2006 Me. Super. LEXIS 3, at *7. Instead it focuses on physical "force, violence, damage, or destruction of property." *Id.* The conduct that Plaintiff has alleged in his complaint is not of the nature that could provide a basis for relief under this statute. The court also concludes that Plaintiff's allegations are not sufficient to support his claim that Defendants have violated his right to substantive due process. Accordingly, in addition to dismissal of counts 4 and 6 for Plaintiff's noncompliance with the MHSA, counts 4 and 6 of the complaint are alternatively dismissed on the grounds that the complaint does not allege sufficient facts to support Plaintiff's claims in these counts.

### E. 42 U.S.C. § 1983 (Count 2)

Count 2 of the complaint alleges that Defendants have deprived him of his rights under the Constitution of the United States and are therefore liable to him under 42 U.S.C. § 1983. Defendants argue that Plaintiff's claim must be dismissed under Rule 12(b)(6) because the complaint fails to allege that the Defendants are state actors.

"Section 1983 provides a remedy to individuals who are deprived of rights secured by federal law or the United States Constitution by persons acting under color of state law." *Gray v. State*, 624 A.2d 479, 482 (Me. 1993). The relevant part of the statute provides that:

> "[e]very person who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . ."

42 U.S.C. § 1983. Accordingly, "to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *Berry v. RSU 13 Sch. Bd.*, No. 2:15-cv-00145-JAW, 2016 U.S. Dist. LEXIS 23903, at *50 (D. Me. Feb. 24, 2016); *West v. Atkins*, 487 U.S. 42, 48 (1988).

The "color of state law" element of a section 1983 claim is "designed to preserve an area of individual freedom by limiting the reach of federal law . . . and to assure that constitutional standards are invoked when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295 (2001). The guiding standard for determining whether the conduct of private actors constitutes state action is as follows: "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.*

The courts have employed four tests to determine whether such a nexus exists, i.e. to determine when a constitutional interest has been injured by the State itself or a private actor acting under color of state law. *See Saunders v. Tisher*, No. CV-04-0027, 2005 Me. Super. LEXIS 197, at *7 (Mar. 28, 2005) (explaining the four tests used by the federal courts). First, conduct is viewed as state action "when it results from the State's exercise of 'coercive power. . .", *Brentwood*, 531 U.S. at 296, or when it results from "a level of such significant state encouragement, either overt or covert, that the alleged wrongdoing must be deemed to be the conduct of the government." *Saunders*, 2005 Me. Super. at *7; *Barrios-Velasquez v. Associacion de Empleados del Estado Libre Asociado de Puerto Rico*, 84 F.3d 487, 493 (1st Cir. 1996). Second, conduct is viewed as state action "when the activity is traditionally a wholly public function that the state has delegated

16

to an otherwise private actor." *Saunders*, 2005 Me. Super. at *8; *Brentwood*, 531 U.S. at 296. Third, conduct is viewed as state action when the state and the actor are in a "symbiotic relationship," meaning that "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Saunders*, 2005 Me. Super. at *8; *Brentwood*, 531 U.S. at 296. Lastly, conduct is viewed as state action where "the actor is entwined with governmental policies, or when the government is entwined in its management or control." *Saunders*, 2005 Me. Super. at *8; *Brentwood*, 531 U.S. at 296. In all four of these contexts, "a private actor is deemed a state agent for purposes of a section 1983 claim only in rare circumstances." *Saunders*, 2005 Me. Super. at *9; *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

The pertinent allegations of Plaintiff's complaint on this issue are summarized below. Plaintiff was charged by the State of Maine with criminal offenses in Penobscot County. As part of a plea agreement, Plaintiff agreed to seek mental health care services from a family counselor. Plaintiff alleges that he called every business providing mental health counseling services in the Bangor area that was listed in his phone book and defendant Dirigo Counseling was the only business to respond to his call. Plaintiff scheduled an appointment for family counseling with Dirigo at Dirigo's Ellsworth location with Megann Holland, a counselor working for Dirigo. Plaintiff attended this session and learned that Megann Holland did not have a psychology degree and became suspicious that she was not a licensed or qualified counselor. At the session, Plaintiff asked what sort of supervision Holland had in regard to their counselling sessions. Plaintiff alleges that Holland responded evasively and said that there was a "panel of associates" with whom she was discussing Plaintiff's sessions. (Amend. Compl. ¶ 52.) Plaintiff became suspicious upon learning this and "asked if any of those people worked for The Government [sic] or The Penobscot

County District Attorney's Office." (*Id.* ¶ 53.) Holland allegedly responded by saying "[t]here might be some government employees I discuss your case with." (*Id.*)

In addition to the above, Plaintiff asserts that it "was clear" that the family counseling sessions he had with Dirigo were being eavesdropped on and that Holland took instructions from a woman's voice over an intercom in her office during one of their sessions. Plaintiff alleges that the Penobscot County District Attorney's Office was attempting to obtain a psychiatric diagnosis of him and that during a counseling session Holland stated that it was her job to "produce a psychiatric diagnosis of the Plaintiff". (*Id.* ¶¶ 57-60.) Plaintiff further alleges that Dirigo Counseling is also "known to work with and for the State of Maine" and that the name "Dirigo" implies that Dirigo Counseling is affiliated with the State because "Dirigo" is part of Maine's state motto. (*Id.* ¶¶ 10, 59.) Based on these and the other allegations in his complaint, Plaintiff concludes that Defendants and the Penobscot County District Attorney's Office were colluding and cooperating with each other to obtain a psychiatric diagnosis of Plaintiff, in violation of his rights, and harm him in various ways.

Disregarding Plaintiff's conclusory assertions, it is clear that even if the properly pled factual allegations in Plaintiff's complaint are accepted as true, taken together and viewed in the light most favorable to him, his allegations fall well short of establishing the "close nexus" that is necessary to prove that Defendants, a private business and its employees, are in reality state actors. Plaintiff's assertion that Dirigo and its staff are colluding with the State is based on nothing more than his own speculation. In determining whether a complaint has sufficiently stated a claim for relief, the court is required to assume the complaint's properly plead factual allegations are true and consider those facts in a light favorable to the plaintiff, it is not required to take for granted the plaintiff's conclusions or his personal suspicions drawn from those facts.

18

To properly plead the "color of law" element of his § 1983 claim, Plaintiff needed to allege sufficient facts to establish that Defendant's actions resulted from the State's coercive power, the State's delegation of a traditional public function to Defendants, the State insinuating itself into the Defendants' activities to the point that the State and Defendants are in a "symbiotic relationship," or that the State was so entwined in the management and control of Dirigo Counseling's business that Defendants should be treated as state actors. The factual allegations in Plaintiff's complaint are insufficient to make any of these showings. The court also concludes that Plaintiff has failed to allege sufficient facts to establish that Defendants have violated his constitutional rights.

For the above reasons, the court concludes that Plaintiff has failed to state any claim against the Defendants for relief under 42 U.S.C. § 1983. Count 2 of the complaint is dismissed.

### F.  42 U.S.C. § 1985 (Count 1)

Count 1 of the complaint alleges that Defendants have conspired with the Penobscot County District Attorney's Office and others to deprive him of his substantive due process rights and therefore are liable to him under 42 U.S.C. § 1985. Defendants argue that this claim must be dismissed because Plaintiff has failed to allege that Defendants were motivated by racial or other class-based animus.

In response to a motion to dismiss filed by the Penobscot County District Attorney's Office and the attorneys working for that office, Plaintiff filed a motion to amend seeking leave to alter count 1 of his complaint to make his allegations of "class based invidiously [sic] discriminatory animus" clearer. The motion to amend did not include a proposed amended complaint but instead directed the court to see the description of the proposed amendment in his opposition brief to the Penobscot County District Attorney's Office's motion to dismiss. In that brief, Plaintiff stated that

he wished to amend his complaint to provide details regarding how he is a victim of torture by the United States government and proposed that his status as an alleged torture victim be used to establish the class membership element of his § 1985 claim against the State of Maine, D.A. Lynch, and A.D.A. Burlock. The court denied that amendment as to the State of Maine, D.A. Lynch, and A.D.A. Burlock in its Order dismissing Plaintiff's complaint against those defendants, as the amendment would have been futile. Similarly, to the extent the Motion to Amend was directed to the Defendants filing this Motion to Dismiss, the Motion to Amend is denied as it would be futile.[4]

The only provision of 42 U.S.C. § 1985 that could support Plaintiff's claim against Dirigo Counseling, Megann Holland, and Alan Algee is subsection (3), which states the following:

> (3) Depriving persons of rights or privileges. If two or more persons in any State or Territory conspire . . . for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

In order to bring an action under § 1985(3), Plaintiff must allege facts sufficient to establish the following elements: "First, plaintiff must allege a conspiracy; second, [he] must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, [he] must identify an overt act in furtherance of the conspiracy; and finally, [he] must show either injury to

---

[4] A motion to amend a complaint may be denied based upon the futility of the proposed amendment, bad faith, undue delay, or undue prejudice. *Montgomery v. Eaton Peabody, LLP,* 2016 ME 44, ¶ 13, 135 A.3d 106. A motion to amend a complaint is futile when the complaint as amended would be subject to dismissal under Rule 12. *See id.* ("[w]hen a proposed amended complaint would be subject to a motion to dismiss, the court is well within its discretion in denying leave to amend.")

person or property, or a deprivation of a constitutionally protected right." *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019).

"A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right. The right must be 'aimed at,' . . .; its impairment must be a conscious objective of the enterprise." *Bray v. Alexandria Clinic*, 506 U.S. 263, 274-275 (1993). The "'intent to deprive of a right' requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, or more than merely accept it; he must act at least in part for the very purpose of producing it." *Bray*, 506 U.S. at 276. The Law Court has further clarified that "a plaintiff must allege that the intended deprivation of equal protection is motivated by some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' actions." *Rogers v. Sylvester*, 570 A.2d 311, 314 (Me. 1990). Accordingly, to state a claim under the statute, Plaintiff is required to allege facts that if proven would establish a conspiracy among the Defendants aimed at achieving the goal of depriving Plaintff of his civil rights, and which was motivated by discriminatory animus toward Plaintiff because of his membership in a cognizable class. *Parker*, 935 F.3d at 18; *Bray*, 506 U.S. at 274-275; *Rogers*, 570 A.2d at 314.

Here, even if "people tortured by the United States Government" is a cognizable class under § 1985[5] and even if Plaintiff is a member of such a class, Plaintiff has alleged no facts in his complaint nor has he described or proposed such allegations in his motion to amend, from which the court can infer that Dirigo Counseling, Megann Holland, or Alan Algee took actions against him that were motivated by animus toward this class of persons. Section 1985(3) provides a cause of action where a conspiracy is directed against a person due to his membership in a cognizable

---

[5] The Court has not heard of a cognizable "class" composed of people who have been "tortured by the United States Government", and Plaintiff has not provided any authority for this proposition.

21

class; it does not provide a cause of action where the conspiracy is directed toward an individual personally. *See Parker*, 935 F.3d at 18; *Griffin*, 403 U.S. at 102-103. Accordingly, the court concludes that Plaintiff's complaint (even if amended as Plaintiff requested) fails to allege sufficient facts to support a cause of action against any of the Defendants under § 1985(3). Count 1 of Plaintiff's complaint against the Defendants is dismissed.

## G. Conclusion on Defendants' Motion to Dismiss

For all of the above reasons, the court concludes that Plaintiff's complaint fails to state any claim upon which relief may be granted against Dirigo Counseling, Megann Holland, or Alan Algee. Accordingly, Plaintiff's complaint is dismissed pursuant to Rule 12(b)(6). The dismissal is with prejudice. *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 9, 708 A.2d 283; *see also* M.R. Civ. P. 41(b) (involuntary dismissal "other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits").

## PLAINTIFF'S REQUEST FOR DEFAULT JUDGMENT and MOTION FOR EXTENSION OF TIME

On August 24, 2020, Plaintiff filed a request for entry of default and default judgment against Dirigo Counseling, Alan Algee, and Megann Holland. On August 27, 2020, Plaintiff filed a "Motion for extension of time. . .in which to serve defendant Megann Holland. . ." In his request for entry of default and default judgment, Plaintiff asserts that all of these Defendants were served pursuant to M.R. Civ. P. 4(c)(1) when service was delivered to Dirigo Counseling on July 6, 2020 by the United States Postal Service. Plaintiff argues that because the Defendants' motion to dismiss was filed on August 3, 2020, which is more than 20 days after they received service in the

22

mail on July 6th, all of the Defendants defaulted due to their failure to answer the complaint within the 20 day period provided by Rule 12(a). Plaintiff also notes in his filing that the Defendants stated in their motion to dismiss that "Dirigo received Plaintiff's Complaint. . . on July 10, 2020." (Pl.'s Request for Default Judgment 2.) Plaintiff argues based on this statement that the Defendants have acknowledged service of process on July 10, 2020.

"Service within [the State of Maine] must be made by an officer or other person authorized by law, or a specially appointed person, with the exceptions of service by mail under Rule 4(c)(1) and the service of a subpoena upon a witness under Rule 45(b)(1)." 2 Harvey & Merritt, *Maine Civil Practice* § 4:3 at 150 (3d, 2019-2020 ed.) Rule 4(c)(1) provides that three requirements must be satisfied to complete service by mail: "(1) the summons and complaint must be mailed to the person to be served; (2) the served documents must be accompanied by a notice and acknowledgement form and a prepaid envelope to be returned to the sender with the signed acknowledgement form; and (3) pursuant to M.R. Civ. P. 4(h), *the signed acknowledgement form must be filed with the court." Brown v. Thaler*, 2005 ME 75, ¶ 4, 880 A.2d 1113 (emphasis added). "If a person to whom papers have been mailed under Rule 4(c)(1) fails to return the acknowledgement, there is no effective service, and the plaintiff must attempt to effect service in some other manner under Rule 4(c)(2) or (3)." *Maine Civil Practice*, § 4:3 at 152; *see also Brown*, 2005 ME 75, ¶¶ 11-13, 880 A.2d 1113 (Me. 2005) (affirmed trial court's dismissal of an action for insufficient service of process where the plaintiff failed to serve defendants for six months after the plaintiff attempted to serve process under Rule 4(c)(1) but did not receive a signed acknowledgement of service from the defendants). Pro se litigants are "subject to the same standards as represented parties, particularly in areas so fundamental as service of process." *Brown v. Thaler*, 2005 ME 75, ¶ 8, 880 A.2d 1113

23

The record in this case plainly shows that Plaintiff did not file an acknowledgement of service signed by any of the Defendants prior to or with his request for default judgment. Having failed to return such signed acknowledgements, Plaintiff did not accomplish service by mail under Rule 4(c) as he claims to have done. The record also shows that Defendants were served in person by the Penobscot County Sheriff's Office on August 3, 2020 and August 10, 2020, respectively. Having previously filed their motion to dismiss on August 3, 2020, the Defendants would not be required to file an answer unless the court denied their motion, which, as set forth in the previous sections of this order, the court has not done. *See* M.R. Civ. P. 12(a). Accordingly, the court concludes that the Defendants are not in default and denies Plaintiff's request for entry of default and default judgment against the Defendants. Plaintiff's motion for extension of time in which to serve Defendant Megann Holland is moot.

Entry:

1.  To the extent Plaintiff moved to amend his Complaint against Dirigo Counseling Clinic LLC, Megann Holland, and Alan Algee, it is DENIED as futile.

2.  Defendant Dirigo Counseling Clinic LLC, Megann Holland, and Alan Algee's Motion to Dismiss is GRANTED.

3.  Plaintiff's Request for Default and Default Judgment is DENIED.

4.  Plaintiff's Motion for Extension of Time to serve defendant Megann Holland is MOOT.

The Clerk shall incorporate this order on the docket by reference pursuant to M.R. Civ. P. 79(a).

_1/20/2021_
Date

Ann Murray, Justice
Maine Superior Court

24